**No. 26-5038**

UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

---

OSAGE NATION, a federally recognized Indian Tribe,

*Plaintiff-Appellant,*

v.

ZACK TAYLOR, in his official capacity as Chairman of the Oklahoma Tax Commission; SHELLY PAULK, in her official capacity as Vice Chairman of the Oklahoma Tax Commission; and DANIEL J. LAFORTUNE, in his official capacity as Secretary of the Oklahoma Tax Commission,

*Defendants-Appellees.*

---

On appeal from the United States District Court
for the Northern District of Oklahoma
The Hon. John D. Russell
No. 4:01-cv-516-JDR-MTS

---

**RESPONSE BRIEF FOR DEFENDANTS-APPELLEES**

GARRY M. GASKINS, II
  *Solicitor General*

WILL FLANAGAN
  *Assistant Solicitor General*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
*Attorney for Defendants-Appellees*

OFFICE OF ATTORNEY GENERAL
STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
William.Flanagan@oag.ok.go
*Attorney for Defendants-Appellees*

**ORAL ARGUMENT IS NOT REQUESTED**

## TABLE OF CONTENTS

JURISDICTIONAL STATEMENT.................................................................... 1

PRIOR OR RELATED APPEALS.................................................................... 2

ISSUES PRESENTED..................................................................................... 3

INTRODUCTION............................................................................................ 4

STATEMENT OF THE CASE .......................................................................... 5

    A. In 2009, the District Court granted summary judgment to
       the State. ................................................................................5

    B. This Court affirmed the District Court...........................................6

    C. Much later, the Supreme Court affirmed this Court in *McGirt*. ...............7

    D. Years later, the Osage Nation filed the current proceedings. ...................8

SUMMARY OF THE ARGUMENT.................................................................11

ARGUMENT..................................................................................................14

    I.   The Osage Nation's Lengthy Delay Was Untimely. ...................................15

    II.  The Osage Nation Is Not Entitled to Rule 60 Relief on the Merits. .......18

        A.   The district court correctly held that Rule 60(b)(5) does not
            apply here because the original judgment did not apply
            prospectively. ..............................................................................18

        B.   The district court correctly held that Rule 60(b)(6) does not
            authorize relief because *McGirt* and *Irby* do not arise from the
            same transaction or occurrence............................................................35

    III. This Court Should Not Resolve the Disestablishment Question on the
        Merits in the First Instance.................................................................43

    IV. *Irby* Remains Good Law. ..................................................................44

CONCLUSION .............................................................................................47

STATEMENT ON ORAL ARGUMENT..........................................................47

CERTIFICATE OF COMPLIANCE.................................................................48

CERTIFICATE OF DIGITAL SUBMISSION ...................................................48

CERTIFICATE OF SERVICE..........................................................................48

## TABLE OF AUTHORITIES

### CASES

*Agostini v. Felton*,
   521 U.S. 203 (1997)..................................................................................28, 29

*Aguilar v. Felton*,
   473 U.S. 402 (1985)....................................................................................... 28

*AMG Capital Management, LLC v. FTC*,
   593 U.S. 67 (2021)......................................................................................... 37

*BLOM Bank SAL v. Honickman*,
   605 U.S. 204 (2025)...................................................................................... 35

*Cashner v. Freedom Stores, Inc.*,
   98 F.3d 572 (10th Cir. 1996)....................................................................26, 35

*Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*,
   131 F.3d 625 (7th Cir. 1997)....................................................................19, 25

*Collins v. City of Wichita*,
   254 F.2d 837 (10th Cir. 1958)................................................................36, 38, 39

*Coltec Indus. v. Hobgood*,
   280 F.3d 262 (3d Cir. 2002) ...............................................19, 24, 25, 26, 30

*Comfort v. Lynn Sch. Comm.*,
   560 F.3d 22 (1st Cir. 2009)....................................................... 14, 19, 25, 26

*Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A. B. de C.V.*,
   58 F.4th 429 (10th Cir. 2023) ..................................................................... 17

*Crow Tribe of Indians v. Repsis*,
   2024 WL 1478580 (D. Wyo. Mar. 28, 2024)..........................................33, 41

*Crow Tribe of Indians v. Repsis*,
   74 F.4th 1208 (10th Cir. 2023) ...................................... 9, 11, 14, 15, 32, 42, 44

*DeWeerth v. Baldinger*,
  38 F.3d 1266 (2d Cir. 1994) ................................................................... 19, 25

*Dowell v. Board of Education of Oklahoma City Public Schools*,
  8 F.3d 1501 (10th Cir. 1993) ................................................................. 19, 23

*FDIC v. United Pac. Ins. Co.*,
  152 F.3d 1266 (10th Cir. 1998) ...................................................................... 14

*FTC v. Elite IT Partners, Inc.*,
  91 F.4th 1042 (10th Cir. 2024) .......................................... 4, 10, 12, 36, 38, 41

*Gibbs v. Maxwell House*,
  738 F.2d 1153 (11th Cir. 1984) ............................................................. 19, 25

*Gonzalez v. Crosby*,
  545 U.S. 524 (2005) ....................................................................................... 35

*Herrera v. Wyoming*,
  587 U.S. 329 (2019) ............................................................................ 32, 34, 42

*In re Gledhill*,
  76 F.3d 1070 (10th Cir. 1996) ....................................................................... 14

*In re Smith*,
  10 F.3d 723 (10th Cir. 1993) ......................................................................... 46

*Johnson v. Spencer*,
  950 F.3d 680, 701 (10th Cir. 2020) .......................................................... 15, 44

*Johnston v. Cigna Corp.*,
  14 F.3d 486 (10th Cir. 1993) ........................................................... 14, 36, 38

*Kemp v. United States*,
  596 U.S. 528 (2022) ................................................................................ 15, 35

*Kirksey v. City of Jackson*,
  714 F.2d 42 (5th Cir. 1983) ............................................................................ 27

*Manzanares v. City of Albuquerque*,
  628 F.3d 1237 (10th Cir. 2010) ...................................................................... 14

*Maraziti v. Thorpe*,
52 F.3d 252 (9th Cir. 1995) ..................................................................... 19, 25

*McGirt v. Oklahoma*,
591 U.S. 894 (2020) ............................................... 4, 8, 9, 12, 39, 45

*Minnesota v. Mille Lacs Band of Chippewa Indians*,
526 U.S. 172 (1999) ................................................................................... 42

*Mullin v. High Mountain*,
182 F. App'x 830 (10th Cir. 2006) .................................................... 9

*Murphy v. Royal*,
875 F.3d 896 (10th Cir. 2017) ................................................ 7, 13, 46, 47

*Osage Nation v. Irby*,
564 U.S. 1046 (2011) ................................................................................. 7

*Osage Nation v. Irby*,
597 F.3d 1117 (10th Cir. 2010) ..................................... 2, 4, 5, 6, 7, 40, 45

*Osage Nation v. Oklahoma ex rel. Okla. Tax Comm'n*,
260 F. App'x 13 (10th Cir. 2007) ...................................................... 2

*Osage Nation v. Oklahoma ex rel. Okla. Tax Comm'n*,
597 F. Supp. 2d 1250 (N.D. Okla. 2009) ...................................... 6

*Pennsylvania v. Wheeling & Belmont Bridge Company*,
59 U.S. 421 (1856) ........................................................................ 19, 21, 22

*Picco v. Glob. Marine Drilling Co.*,
900 F.2d 846 (5th Cir. 1990) .................................................. 19, 25, 28

*Pierce v. Cook & Co.*,
518 F.2d 720 (10th Cir. 1975) ............................................................ 35, 36

*R.C. ex rel. Ala. Disabilities Advoc. Program v. Nachman*,
969 F. Supp. 682 (M.D. Ala. 1997) .............................................. 15

*Rufo v. Inmates of Suffolk County Jail*,
502 U.S. 367 (1992) ................................................................................... 31

iv

*Servants of the Paraclete v. Does*,
204 F.3d 1005 (10th Cir. 2000)........................................................................ 18

*Sharp v. Murphy*,
591 U.S. 977 (2020)............................................................................................ 7

*Solem v. Bartlett*,
465 U.S. 463 (1984)............................................................................................ 6

*Standard Oil Co. of Cal. v. United States*,
429 U.S. 17 (1976).................................................................................11, 17, 44

*Tamayo v. Stephens*,
740 F.3d 986 (5th Cir. 2014)........................................................................... 15

*Twelve John Does v. Dist. of Columbia*,
841 F.2d 1133 (D.C. Cir. 1988) ......................................19, 20, 21, 22, 23, 24

*United States v. Melot*,
712 F. App'x 719 (10th Cir. 2017) .............................................................23, 24

*United States v. Swift & Co.*,
286 U.S. 106 (1932)......................................................................................... 22

*United Student Aid Funds, Inc. v. Espinosa*,
559 U.S. 260 (2010)......................................................................................... 43

*Van Skiver v. United States*,
952 F.2d 1241 (10th Cir. 1991)....................................................................... 38

*Zahl v. Harper*,
403 F. App'x 729 (3d Cir. 2010)..................................................................... 15

*Zurich N. Am. v. Matrix Serv., Inc.*,
426 F.3d 1281 (10th Cir. 2005)....................................................................... 15

## STATUTES

28 U.S.C. § 1291 ...................................................................................................... 1

## RULES

C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2863 (1973) ................................................................................................... 21

FED. R. CIV. P. 60 ............................................. 8, 9, 10, 11, 12, 14, 15, 16, 18-44

**JURISDICTIONAL STATEMENT**

Defendants-Appellees agree that this Court possesses jurisdiction under 28 U.S.C. § 1291 to consider the appeal.

## PRIOR OR RELATED APPEALS

Twenty-five years ago, Plaintiff-Appellant, the Osage Nation, sued the State of Oklahoma, the Oklahoma Tax Commission, and individual members of the Tax Commission in their official capacity. After the district court denied Oklahoma's sovereign-immunity-based motion to dismiss, this Court reversed "the district court's decision to allow the Nation's suit to proceed against the State of Oklahoma and the Oklahoma Tax Commission" but affirmed the district court as to the individual Tax Commission members sued in their official capacity. *Osage Nation v. Oklahoma ex rel. Okla. Tax Comm'n*, 260 F. App'x 13, 22 (10th Cir. 2007) (unpublished). Following remand, the district court granted Defendants summary judgment. In 2010, this Court upheld that decision in *Osage Nation v. Irby*, 597 F.3d 1117, 1120 (10th Cir. 2010). Now, more than fifteen years later, the Osage Nation seeks to vacate that judgement.

2

## ISSUES PRESENTED

1.      Whether the Osage Nation complied with Federal Rule of Civil Procedure 60(c)(1)'s timeliness requirement even though it waited more than four years after the purported change in law to press its interests in this lawsuit.

2.      Whether an order granting summary judgment and dismissing all claims lacks a prospective executory effect as is required to vacate a judgment by Rule 60(b)(5).

3.      Whether a Supreme Court case holding that a different tribe's reservation still existed based on different treaties and statutes than the Osage Nation's situation is factually related to the present case as is required to vacate a judgment by Rule 60(b)(6).

## INTRODUCTION

Over fifteen years ago, this case was decided, definitively. This Court held in no uncertain terms that Congress disestablished the Osage Nation's reservation in Osage County, Oklahoma. *Osage Nation v. Irby*, 597 F.3d 1117, 1120 (10th Cir. 2010). In doing so, this Court affirmed the district court's grant of summary judgment to Defendants. And the Osage Nation's petition for certiorari was subsequently denied. *Osage Nation v. Irby*, 564 U.S. 1046 (2011). Now, based on a subsequent Supreme Court case involving a different tribe with different treaties, the Osage Nation claims that extraordinary circumstances justify vacating the decision in this case. But the Osage Nation faces three insurmountable procedural hurdles in its pursuit of relief under Rule 60(b) of the Federal Rules of Civil Procedure.

First, the motion was not timely. The case the Osage Nation relies on, *McGirt v. Oklahoma*, 591 U.S. 894 (2020), was decided *four and a half years* before the Nation sought to vacate the *Irby* decision. That tardiness alone warrants denial. Second, the district court correctly determined that this case was not available for Rule 60(b)(5) relief because the underlying ruling does not possess a prospective or executory application. Third, a clear line of decisions from this Court dictates that Rule 60(b)(6) relief is unavailable in this case because *McGirt* is not factually related to the underlying decision here. *E.g.*, *FTC v. Elite IT Partners, Inc.*, 91 F.4th 1042, 1045 (10th Cir. 2024). The Osage

4

Nation is also wrong on the merits. *Irby* was correctly decided, and *McGirt* does not change that conclusion. This Court should affirm the district court.

STATEMENT OF THE CASE

**A. In 2009, the District Court granted summary judgment to the State.**

This case arose, a quarter century ago, out of an Osage tribal member's failed attempt to avoid paying Oklahoma income taxes. *Irby*, 597 F.3d at 1121. In an effort to exempt some of its members from paying income taxes to the State of Oklahoma, the Osage Nation ("Osage Nation" or "Nation") sued members[1] of the Oklahoma Tax Commission in the U.S. District Court for the Northern District of Oklahoma. P.A. Vol. I at 33.[2] The Nation claimed that its members who work and reside in Indian country were exempt from paying state income taxes. *Id.* at 37. Underlying this claim was the assertion that the Nation's reservation in Osage County, Oklahoma, had not been extinguished. *Id.* at 38. The Nation sought declaratory relief stating that its reservation has not been disestablished and injunctive relief prohibiting Defendants

---

[1] Those members have changed since this litigation began. Currently, Zack Taylor is the Chairman, Shelly Paulk has remained the Vice Chairman, and Daniel J. LaFortune is the Secretary. Pursuant to Oklahoma law, the new officers have automatically replaced their predecessors as parties to this litigation. OKLA. STAT. tit. 12, § 2025(d)(1). Accordingly, Zack Taylor has replaced Mark Wood, Daniel J. LaFortune has replaced Charles Prater, and Shelly Paulk has remained a party.

[2] References to the Osage Nation's Appendix will include a pincite and take the form of P.A. Vol.[#] at [pg. #]. References to Defendants-Appellees' supplemental appendix will take the form of D.A. at [pg. #].

from imposing income tax on the Nation's members who are employed and reside within the reservation. *Id.* at 88. Defendants ("Oklahoma" or "the State") eventually moved for summary judgment.

The district court held that the Osage Nation's reservation had been disestablished and granted Oklahoma summary judgment on all the Nation's claims. *Osage Nation v. Oklahoma ex rel. Okla. Tax Comm'n*, 597 F. Supp. 2d 1250 (N.D. Okla. 2009). The court carefully walked through the Supreme Court's test for considering whether Congress has disestablished a reservation as set out in *Solem v. Bartlett*, 465 U.S. 463 (1984). *Osage Nation*, 597 F. Supp. 2d at 1257. The court recognized that "statutory language" is "[t]he most probative evidence of diminishment." *Id.* It then found that the language of the Osage Allotment Act, the Osage Division Act, the Oklahoma Enabling Act, the Oklahoma Organic Act, and the Oklahoma Indian Welfare Act all support the conclusion that the Nation's reservation had been disestablished. *Id.* at 1257–61. Similarly, the court pointed to legislative reports demonstrating that Congress considered the Osage Reservation disestablished. *Id.*

## B. This Court affirmed the District Court.

On appeal, this Court affirmed. This Court applied *Solem's* three-part framework by considering "(1) explicit statutory language[,] ... (2) surrounding circumstances, [and] (3) subsequent events, including congressional action and demographic history of the opened lands." *Irby*, 597 F.3d at 1122 (citation omitted). After first finding the statutory

language of the Osage Allotment Act nonconclusive, this Court held that "[t]he manner in which the Osage Allotment Act was negotiated reflects clear congressional intent and Osage understanding that the reservation would be disestablished." *Id.* at 1124. And the Court found that the "uncontested facts in the record" reveal "a contemporaneous understanding that the reservation had been dissolved." *Id.* at 1125 (citing several historians discussing the dissolution of the Osage reservation). This Court also found that post-enactment history reinforced disestablishment of the reservation. For example, "federal officials responsible for the Osage lands repeatedly referred to the area as a 'former reservation' under state jurisdiction." *Id.* at 1126. Moreover, the demographics of Osage County supported a finding of disestablishment, as Osage Indians represented merely six percent of Osage County population by 1910. *Id.* at 1127. Taking these factors together, the Court concluded that Congress had disestablished the Osage Nation's reservation. *Id.* The Supreme Court denied the Nation's petition for certiorari on June 27, 2011—making the district court's order final. *Osage Nation v. Irby*, 564 U.S. 1046 (2011).

**C. Much later, the Supreme Court affirmed this Court in *McGirt*.**

Nine years after the Supreme Court denied certiorari in this case, the Supreme Court affirmed a different decision from this Court applying the same disestablishment analysis as it did in *Irby. See Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017). In short, the Supreme Court after *McGirt* affirmed this Court's *Murphy* holding that the Creek

Nation's reservation in Oklahoma still existed. *See Sharp v. Murphy*, 591 U.S. 977, 978 (2020). The *McGirt* Court reiterated *Solem*'s mandate that disestablishment is the purview of Congress before considering the Creek Nation's treaty and whether Congress had conclusively disestablished the Creek reservation. *McGirt*, 591 U.S. at 903. The Court held that the Creek Allotment Act, the Five Civilized Tribes Act, and other statutes pertaining specifically to the Creek Nation did not demonstrate any Congressional intent to disestablish the Creek reservation. *Id.* at 905–11. And the Court found the absence of an intent to disestablish sufficiently clear to refrain from considering any extratextual evidence of the disestablishment. *Id.* at 913–916.

**D. Years later, the Osage Nation filed the current proceedings.**

Around four and a half years after the Supreme Court issued *McGirt*, the Osage Nation filed its motion to vacate the judgment in this case pursuant to Rule 60(b) of the Federal Rules of Civil Procedure. P.A. Vol. II at 161. The Nation claimed that, even though the Supreme Court (like this Court) applied *Solem*, *McGirt* "effected a fundamental change" in the law which permitted vacatur. *Id.* at 211. According to the Nation, relief from judgment was appropriate under either Rule 60(b)(5) or Rule 60(b)(6). *Id.* at 210. For Rule 60(b)(5), the Nation asserted that the judgment should be vacated because "applying it prospectively is no longer equitable." *Id.* (quoting FED. R. CIV. P. 60(b)(5)). If Rule 60(b)(5) was unavailable, the Nation asserted that the "catchall" Rule 60(b)(6) provision would suffice as "it would plainly offend justice to

8

maintain the *Irby* judgment in force." *Id.* at 217. Oklahoma responded by asserting that the Nation's motion was untimely, that the Nation could not receive relief under Rule 60(b)(5) because the district court's judgment lacks a prospective application, that Rule 60(b)(6) relief was unavailable because a change in case law does not justify vacatur here, and that *Irby* was consistent with *McGirt. Id.* at 222–35.

The district court correctly denied the Nation's motion for relief from judgment. *Id.* at 262. With regards to Rule 60(b)(5), the district court began by noting that relief under the Rule "is 'extraordinary' and 'may only be granted in exceptional circumstances.'" *Id.* at 256 (quoting *Mullin v. High Mountain*, 182 F. App'x 830, 832 (10th Cir. 2006)). And the court further emphasized that many circuits had limited the application of Rule 60(b)(5) to instances where there was an "active injunction or court intervention at play." *Id.* at 257. The court held that the mere preclusive effect of the judgment in this case does not count as applying the judgment prospectively as required by Rule 60. *Id.* at 259.

The district court addressed the Nation's reliance on *Crow Tribe of Indians v. Repsis*, 74 F.4th 1208 (10th Cir. 2023), where this Court held that a district court abused its discretion by refusing to consider a movant's Rule 60(b)(5) motion that was based on a Supreme Court case that called the underlying district court order into question. *Id.* at 258. But the district court held that *Repsis* was not controlling because the Tenth Circuit's analysis was limited "to whether a district court may grant relief from judgment

9

under Rule 60 when the Tenth Circuit affirmed the original judgment on grounds not originally considered by the district court." *Id.* Accordingly, *Repsis* did not provide any guidance on whether *Irby*'s judgment had a prospective application. Finally, the district court rejected the Nation's equity-based argument that Rule 60(b) relief was the only mechanism to undo *Irby's* judgment by stating that "[t]here is nothing to preclude the Osage Nation from filing a new iteration of its original suit and arguing that this Court's prior precedent is no longer good law." *Id.* at 260.

The district court then turned to Rule 60(b)(6). It held that the Nation's claims on that front were irreconcilable with Tenth Circuit precedent. *Id.* at 260–61. After all, "[t]he Tenth Circuit has held that a 'change in case law doesn't justify vacatur under Rule 60(b)(6)' except where the underlying and intervening cases are 'factually related.'" *Id.* (quoting *FTC v. Elite IT Partners, Inc.*, 91 F.4th 1042, 1049 (10th Cir. 2024)). And *Elite IT* defined "factually related" to only occur when the cases arise "out of the same transaction or occurrence." 91 F.4th at 1049. Thus, the district court held, as it had to, that *McGirt* was not factually related to *Irby* because the two cases "discuss different tribes, different treaties, different acts of Congress, and different political histories." P.A. Vol. II at 261. Accordingly, the district court denied the Nation relief under Rule 60(b)(6). *Id.* The Nation appealed.

For the following reasons, this Court should affirm the district court.

## SUMMARY OF THE ARGUMENT

This Court should affirm the district court's denial of the Osage Nation's motion to vacate a fifteen-year-old final judgment for at least four reasons.

First, the Nation's motion was not filed within a reasonable time as Rule 60(c)(1) requires. The decision the Nation claims justifies relief (*McGirt*) was decided in 2020 to much publicity, praise, and criticism—especially within Oklahoma. The Nation waited more than four years afterward to seek relief from the judgment in this case, despite raising substantially the same arguments in other forums as early as 2021. P.A. Vol. II at 161. The Nation's asserted excuse, that it was awaiting this Court's 2023 decision in *Crow Tribe of Indians v. Repsis*, 74 F.4th 1208 (10th Cir. 2023), P.A. Vol. II at 218, does not withstand scrutiny, because *Repsis* broke no new legal ground; it merely applied a rule the Supreme Court articulated decades earlier in *Standard Oil Co. of Cal v. United States*, 429 U.S. 17 (1976). Defendants, meanwhile, would suffer real prejudice from reopening this judgment, including disruption to the settled administration of criminal jurisdiction in Osage County. Each factor this Court considers in assessing timeliness points toward denial.

Second, even if the motion were timely, Rule 60(b)(5) does not apply because the underlying judgment lacks the "prospective application" the Rule requires. P.A. Vol. II at 259. The district court here simply granted summary judgment and dismissed the Nation's claims. It did not impose an injunction, consent decree, or any ongoing

11

obligation subject to judicial supervision. As far as the State has been able to discern, every circuit to address the question has held that a judgment's ordinary preclusive effect is not "prospective application" within the meaning of Rule 60(b)(5). The Nation's contrary reading would create a circuit split where none is merited, eliminate any meaningful limit on the Rule, and render every final judgment perpetually subject to reopening whenever the law later shifts.

Third, Rule 60(b)(6) likewise offers the Nation no relief. This Court's precedent holds that a change in case law does not justify vacatur under Rule 60(b)(6) unless the change arises in a factually related case, which it defines as a case arising from the same transaction or occurrence. *Elite IT Partners*, 91 F.4th at 1049. *McGirt* and this case are only alike because they both consider the disestablishment of an Indian tribe. They involve different tribes, different treaties, different allotment statutes, and different legislative histories. P.A. Vol. II at 261. Indeed, the Nation's own argument that the Osage allotment provisions differ materially from the Creek provisions at issue in *McGirt*, Osage Br. at 22–23, confirms that the two cases are not factually related.

Finally, should this Court reach the merits, it should hold that *Irby* remains good law. *McGirt* expressly limited its holding to the Creek Nation's treaties and disclaimed any broader rule, and its methodology is consistent with this Court's approach in *Irby*. *McGirt*, 591 U.S. at 932. Indeed, it is worth remembering that *McGirt* did not lead to a reversal of this Court but rather an affirmance. This Court, that is, issued the underlying

12

decision in both *Irby* and *Murphy/McGirt*, and did not find them contradictory. In fact, in *Murphy*, this Court cited *Irby* as good law. *Murphy*, 875 F.3d at 931. The district court's judgment should be affirmed.

## ARGUMENT

In our judicial system, "finality is fundamental." *Comfort v. Lynn Sch. Comm.*, 560 F.3d 22, 26 (1st Cir. 2009). Parties possess "vested rights" in their "final judgments." *Johnston v. Cigna Corp.*, 14 F.3d 486, 493 (10th Cir. 1993). And courts possess only a narrowly circumscribed ability to reopen final judgments. *Id.* That limited avenue is codified in Rule 60(b), which "provides a procedure whereby, in appropriate cases, a party may be relieved of a final judgment." *In re Gledhill*, 76 F.3d 1070, 1080 (10th Cir. 1996). Relevant here, Rule 60(b) provides that:

> On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: … (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

FED. R. CIV. P. 60(b).

To maintain the fundamental principle of finality, this Court has insisted, rightly, that "[r]elief under Rule 60(b) is 'extraordinary and may only be granted in exceptional circumstances.'" *Manzanares v. City of Albuquerque*, 628 F.3d 1237, 1241 (10th Cir. 2010) (citation omitted). And the party seeking relief "bears the burden of showing that relief is warranted." *Repsis*, 74 F.4th at 1216. Moreover, and importantly here, a Rule 60(b) motion "must be made within a reasonable time." FED. R. CIV. P. 60(c).

The denial of a Rule 60(b) motion is reviewed "for abuse of discretion." *FDIC v. United Pac. Ins. Co.*, 152 F.3d 1266, 1272 (10th Cir. 1998). The district court's decision,

14

that is to say, will only be reversed "if a definite, clear or unmistakable error occurred below." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005) (citation omitted). A district court, however, "abuse[s] its discretion if it based its ruling on an erroneous view of the law." *Id.* Thus, "subsidiary legal questions" are reviewed "de novo." *Johnson v. Spencer*, 950 F.3d 680, 701 (10th Cir. 2020).

## I.    The Osage Nation's Lengthy Delay Was Untimely.

"[A]ll Rule 60(b) motions[] must be made within a reasonable time." *Kemp v. United States*, 596 U.S. 528, 538 (2022). Whether a Rule 60(b) motion has been filed within a reasonable time is a fact-intensive inquiry under which this Court must consider 1) the moving party's knowledge of the grounds for relief; 2) the reason for delay; 3) the practical ability of the litigant to learn earlier of the grounds relied upon; and 4) prejudice to the non-moving party. *See Repsis*, 74 F.4th at 1217. Courts have denied requests for Rule 60(b) relief as untimely when the movant waited more than four years before seeking relief. *E.g.*, *R.C. ex rel. Ala. Disabilities Advoc. Program v. Nachman*, 969 F. Supp. 682, 700 (M.D. Ala. 1997); *Zahl v. Harper*, 403 F. App'x 729, 734 (3d Cir. 2010) (per curiam) (unpublished) (waiting more than eight years is untimely); *Tamayo v. Stephens*, 740 F.3d 986, 991 (5th Cir. 2014) (a movant's claim was not brought within a reasonable time when the movant was aware of the basis of his claim for eight months and filed the motion only two days before his execution).

Each factor indicates that the Osage Nation's Motion was not filed within a reasonable time. As to the first and third factors, the Nation's Motion is untimely because of how long it waited to file this action after *McGirt* was decided. *McGirt*, the linchpin of the Nation's Motion, was issued in the middle of 2020 to much fanfare. And yet, the Nation waited nearly four and a half years before filing for Rule 60(b) relief. The publicity surrounding *McGirt* was immense, especially within Oklahoma, thus there is no doubt whatsoever that the Osage Nation was made aware of the decision almost immediately. Indeed, by its own admission, the Nation has known of the arguments raised in its Motion for several years but declined to present the same to this Court. Specifically, the Nation admitted that it had raised "essentially the same arguments" in "multiple fora" in 2021 and 2023 while neglecting to raise such arguments in this Court. P.A. Vol. II at 218. Although Rule 60(b)(5) and (b)(6) motions are not subject to the one-year time limitation that other Rule 60 motions are subject to, more than four years between the intervening court decision and the Nation's Motion is still plainly excessive. *See* FED. R. CIV. P. 60(c); *see also Nachman*, 969 F. Supp. at 700.

As to the second factor, the Osage Nation makes a half-hearted attempt to explain the reason for its delay, arguing that it "was not until last year that the Tenth Circuit in *Repsis* clarified the availability of Rule 60(b) relief in these circumstances." P.A. Vol. II at 218. But *Repsis* did not announce any new rule of law applicable to this case. *See infra* p.33. The "circumstances" the Nation refers to are when the trial court's

16

order was affirmed on appeal long before a motion to vacate is filed. Yet, as the Nation recognizes, the rule that an appellate court's affirmance of a final judgment does not deprive the district court of its jurisdiction to hear a motion to vacate was established by the Supreme Court nearly fifty years ago. *See Standard Oil Co. of Cal. v. United States*, 429 U.S. 17 (1976) (per curiam); P.A. Vol. II at 189, 210. *Repsis* merely reiterates and applies this long-established rule. Therefore, *Repsis* does not provide an adequate excuse for the Nation's obviously dilatory filing. Because the Nation fails to offer a defensible justification for its delay in filing, this Court should find the Nation's Motion untimely.

Finally, as to the fourth factor, Defendants will suffer substantial prejudice if this Court grants Nation's tardy Motion. As a preliminary matter, if Nation's Motion were granted, Defendants would suffer substantial prejudice in that the public's "'strong interest in protecting the finality of judgments' after they are entered" would be undermined. *Compañía de Inversiones Mercantiles S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, 58 F.4th 429, 459 (10th Cir. 2023) (citation omitted). Moreover, for many years the State, its subdivisions, and the public have ordered their affairs—including the administration of criminal justice in Osage County—in reliance on the finality of this judgment. D.A. at 18–20. Upsetting those settled reliance interests after so long an unexplained delay is precisely the prejudice the reasonable-time requirement guards against. The substantial prejudice Defendants would suffer if this Court were to grant the Nation relief militates against finding the Nation's Motion timely.

Because each of the relevant factors indicates that the Nation's Motion was not filed within a reasonable time, this Court should deny the Motion in its entirety.

## II.     The Osage Nation Is Not Entitled to Rule 60 Relief on the Merits.

The Nation's Motion could also be denied on the merits, should this Court reach that far. Importantly, the merits of the Osage Nation's Motion must be evaluated *independently* of the merits of the Judgment. *Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) (Rule 60(b) motions "are inappropriate vehicles to reargue an issue previously addressed by the Court"). The Nation spills a copious amount of (digital) ink decrying *Irby* as inconsistent with *McGirt*, but before this Court even considers that argument, it must satisfy itself that the *Irby* judgment meets one of the Rule 60(b) criteria for vacating a judgment. As set forth in detail below, Rule 60(b)(5) does not apply here because the judgment lacks "prospective application" within the meaning of the Rule. Further, Plaintiff is not entitled to relief under Rule 60(b)(6) because a change in law does not warrant vacatur of a final judgment under the Rule.

### A.     The district court correctly held that Rule 60(b)(5) does not apply here because the original judgment did not apply prospectively.

Rule 60(b)(5) authorizes a court to vacate a judgment when "the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable." FED. R. CIV. P. 60(b)(5). The Nation asserts that only this third stated reason supports relief—that

18

applying the judgment prospectively is no longer equitable. Osage Br. at 3. But for the judgment to be vacated for that reason, it must apply prospectively. It does not.

Here, the judgment does not have prospective application within the meaning of Rule 60(b)(5). The district court granted Defendants summary judgment, which dismissed the claims. There was no injunction or continuing obligation. The only ongoing effect that the Osage Nation points to is the judgment's preclusive effect. And when presented with the question whether a judgment's ordinary preclusive effect qualifies as applying prospectively, courts have uniformly held that it does not. *See, e.g.,* *Twelve John Does v. Dist. of Columbia*, 841 F.2d 1133, 1138 (D.C. Cir. 1988) ("That a court's action has continuing consequences, however, does not necessarily mean that it has 'prospective application' for the purposes of Rule 60(b)(5)."); *Coltec Indus. v. Hobgood*, 280 F.3d 262, 272–73 (3d Cir. 2002); *Picco v. Glob. Marine Drilling Co.*, 900 F.2d 846, 851 (5th Cir. 1990); *Gibbs v. Maxwell House*, 738 F.2d 1153, 1155–56 (11th Cir. 1984) (per curiam); *Maraziti v. Thorpe*, 52 F.3d 252, 254 (9th Cir. 1995); *DeWeerth v. Baldinger*, 38 F.3d 1266, 1276 (2d Cir. 1994); *Comfort v. Lynn Sch. Comm.*, 560 F.3d 22, 28 (1st Cir. 2009); *Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc.*, 131 F.3d 625, 631 (7th Cir. 1997); *Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*, 8 F.3d 1501, 1509 (10th Cir. 1993). At least *nine* circuits have agreed with the district court's conclusion.

Neither Rule 60 nor the Notes of the Advisory Committee on Rules defines "prospective application," so the phrase has been given its meaning through a series of

19

court cases. *Twelve John Does*, decided by the D.C. Circuit, stands as a foundational decision for courts considering whether a previous judgment has a "prospective application" for purposes of Rule 60(b)(5). It arose out of a complicated fact pattern. Relevant here, the U.S. Attorney General was originally named a defendant in a lawsuit challenging the prison conditions in Washington, D.C. *Twelve John Does*, 841 F.2d at 1134. The district court dismissed the Attorney General from the suit before the remaining parties "negotiated consent decrees governing conditions at the prisons." *Id.* After the district court found that the Attorney General held some degree of culpability in the District of Columbia's repeated consent decree violations, the court granted the plaintiffs' motions "to reinstate the Attorney General pursuant to Rule 60(b)." *Id.* at 1134, 1136–37. The district court relied on the portion of Rule 60(b)(5) that provides that a court may modify a judgment if "it is no longer equitable that the judgment should have prospective application." *Id.* at 1138 (quoting pre-2007 language of FED. R. CIV. P. 60(b)(5)).[3] The Attorney General appealed that decision—presenting the D.C. Circuit with the issue whether the order dismissing the Attorney General could be vacated pursuant to Rule 60(b)(5).

The D.C. Circuit held that the order could *not* be vacated and reversed the district court. Its analysis began with the recognition that an order could be modified under the

---

[3] The 2007 amendments to the Federal Rules of Civil Procedure were "intended to be stylistic only." Notes of the Advisory Committee on Rules, FED. R. CIV. P. 60 (2007).

relevant part of Rule 60(b)(5) only if it had "prospective application.*"Id.* at 1138. Before interpreting that phrase, the circuit court acknowledged, commonsensically, that "every court order causes at least some reverberations into the future." *Id.* To ascertain the relevant phrase's meaning, the D.C. Circuit turned to two Supreme Court precedents "from which the prospective application portion of Rule 60(b) was derived." *Id.* (citing 11 C. Wright & A. Miller, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 2863 (1973)).

The first of these cases, *Pennsylvania v. Wheeling & Belmont Bridge Company*, 59 U.S. 421 (1856), concerned a Supreme Court decision holding that a particular bridge spanning the Ohio River was unlawful. As a remedy, the Court ordered the company to either elevate or remove the bridge. *Id.* at 429. In response to the Court's holding, Congress enacted a law declaring that the bridge did not constitute an obstruction of navigation and was therefore lawful. *Id.* The company that built the bridge filed an action at the Court arguing that the act of Congress superseded the Court's prior judgment and that the Court should modify its original judgment. *Id.* In response, the Court distinguished between remedies that apply prospectively and remedies that have already occurred. It stated that "if the remedy in this case had been an action at law, and a judgment rendered in favor of the plaintiff for damages, the right to these would have passed beyond the reach of the power of congress." *Id.* at 431. Therefore, the company remained liable for "the costs adjudged" in the original judgment. *Id.* The injunction ordering the abatement of the bridge, on the other hand, was different. This part of the

21

judgment "is executory, a continuing decree, which requires not only the removal of the bridge, but enjoins the defendants against any reconstruction or continuance." *Id.* The Court held that this part of the judgment could be vacated because it required a party to take an action that is now not required by law. *Id.* at 431–32. *Wheeling* created a straightforward precedent. Injunctive or executory relief could be modified by subsequent legal changes, but damages or other legal remedies may not be modified.

The Supreme Court expanded on this prospective/retrospective dichotomy in *United States v. Swift & Co.*, 286 U.S. 106 (1932). There, the Court was faced with a challenge to a consent decree enjoining several meat-packing companies from engaging in certain monopolistic conduct. *Swift*, 286 U.S. at 109–14. The Court explained that "[a] continuing decree of injunction directed to events to come is subject always to adaptation as events may shape the need." *Id.* at 114. And the Court defined continuing injunctions as "those that involve the supervision of changing conduct or conditions and are thus provisional and tentative." *Id.*

Applying these binding precedents, the D.C. Circuit held that the standard for "determining whether an order or judgment has prospective application within the meaning of Rule 60(b)(5) is whether it is 'executory' or involves 'the supervision of changing conduct or conditions.'" *Twelve John Does*, 841 F.2d at 1139. With this standard, the D.C. Circuit had "no difficulty" determining that the order dismissing the Attorney General "did not have the requisite prospective application." *Id.* The dismissal order

"did not compel him to perform, or order him not to perform, any future act; it did not require the court to supervise any continuing interaction between him and the other parties to the case." *Id.* Instead, "it definitively discharged the Attorney General from any further involvement in the case." *Id.*

This Court has applied the same standard. In *Dowell*, this Court stated that Rule 60(b)(5) "requires" that the underlying judgment "have [a] prospective effect." 8 F.3d at 1509. The Court approvingly cited *Twelve John Does* for the proposition that "judgment from which relief is sought under Rule 60(b)(5) must have prospective effect, in that it is executory or involves supervision of changing conduct or conditions." *Id.* This Court reiterated that principle in *United States v. Melot*, 712 F. App'x 719 (10th Cir. 2017) (unpublished). There, this Court stated that Rule 60(b)(5) does not "allow a court to provide relief from *any* judgment, even assuming it's inequitable; it only allows for relief from judgments that have prospective application or effect." *Id.* at 720–21. And that prospective application occurs only if the judgment is "'executory' or involves 'the supervision of changing conduct or conditions.'" *Id.* at 721 (citing *Twelve John Does*, 841 F.2d at 1189–39).

With this standard in mind, the district court's decision to deny the Osage Nation's motion to vacate was plainly correct. The underlying judgment granted summary judgment to Defendants nearly two decades ago. The only remedy it provided was dismissing the Nation's claims. The order does not require any party to take any

23

action and it does not involve the district court in the supervision of changing conduct or conditions. *Twelve John Does*, 841 F.2d at 1139. As the district court aptly put it in responding to the Nation below: "The Court is no longer active in this case—there is no injunction, consent decree, or other order necessitating the Court's ongoing exercise of jurisdiction." P.A. Vol. I. at 259. And on appeal, the Nation has not made any meaningful effort to establish that the underlying judgment meets the relevant standard. Instead, the Nation argues that the district court applied the wrong standard. In particular, the Nation asserts that Rule 60(b)(5) relief is available any time a court deems that it would be inequitable for a judgment to have a preclusive effect. Osage Br. at 26. The Nation's claim is incorrect, and the arguments it advances in support of its theory are fatally flawed.

The Nation critiques the district court for relying on *Twelve John Does* and other out-of-circuit decisions in adopting the prospective application requirement. *Id.* at 31. But the Nation ignores the two Tenth Circuit cases applying the same standard—*Dowell*, 8 F.3d at 1509, and *Melot*, 712 F. App'x at 720–21. Moreover, it appears that every single circuit to examine the standard for determining whether vacatur is permitted under Rule 60(b)(5) has adopted the same standard as this Court and *Twelve John Does. See, e.g., Coltec Indus.*, 280 F.3d at 272 ("a 'prospective' injunction envisions a restraint of future conduct"); *Picco*, 900 F.2d at 851 (The Rule "applies only to final judgments with prospective application" and the preclusive effect of judgments "clearly is not

24

enough."); *Gibbs*, 738 F.2d at 1156 ("That plaintiff remains bound by the dismissal is not a 'prospective effect' within the meaning of rule 60(b)(5) any more than if plaintiff were continuing to feel the effects of a money judgment against him."); *Maraziti*, 52 F.3d at 254 ("The district court was undoubtedly correct in determining that the dismissal order did not have 'prospective application' within the meaning of Rule 60(b)(5)."); *DeWeerth v. Baldinger*, 38 F.3d at 1276 (denying a motion to vacate under Rule 60(b)(5) when "the only prospective effect of the court's judgment is its bar to future relitigation"); *Comfort*, 560 F.3d at 28 (holding that only "forward-looking judgments, such as injunctions and consent decrees" have "prospective application"); *Cincinnati Ins.*, 131 F.3d at 631 ("many judgments have continuing consequences in the future but that does not mean they have 'prospective application' for the purposes of Rule 60(b)(5)"). Again, at least nine circuits have held that vacatur is only appropriate pursuant to Rule 60(b)(5) if the judgment has an ongoing prospective effect.

This body of precedent is well-supported by the text of the statute. And these decisions recognize that there is no limiting principle to the Osage Nation's contrary argument. Every final judgment on the merits has preclusive effect on the parties to it. *Coltec Indus.*, 280 F.3d at 272. If that ordinary consequence of finality were sufficient to trigger Rule 60(b)(5) whenever the law allegedly shifts, then no judgment would ever truly be final. A litigant would need only wait for a plausible change in law, in some case at any time in the future, and then move to reopen. This result would render

25

meaningless Congress's decision to limit Rule 60(b) relief to certain narrow categories. *Comfort*, 560 F.3d at 26. And that outcome further cannot be squared with the "extraordinary circumstances" standard this Court applies to Rule 60(b) motions. *Cashner v. Freedom Stores, Inc.,* 98 F.3d 572, 576 (10th Cir. 1996). The Nation never meaningfully grapples with this weakness in its theory. When discussing this weight of precedent, the Nation musters little reason to disregard it.

To be sure, the Nation argues that a few of these cases concerned factual situations that are different than this case. Osage Br. at 31–32. But even if the factual circumstances are different, that does not change the fact that these cases stand for the proposition that Rule 60(b)(5) relief is limited to orders that impose an ongoing obligation on the parties. For example, the Nation attempts to distinguish *Coltec Industries* by noting that the case involved a plaintiff seeking relief from the voluntary dismissal of one of its claims. *Id.* at 32. According to the Nation, "*Coltec* merely confirmed that courts generally hold that dismissals with prejudice are not prospective within the meaning of Rule 60(b)(5) and that collateral estoppel arguments are 'common to all judgments.'" *Id.* (citation omitted). But that is the point. The Third Circuit denied the plaintiff's motion for relief from the dismissal order because the dismissal order was not prospective. *Coltec Indus.*, 280 F.3d at 272. The underlying order granting summary judgment to Defendants in this case has no more prospective effect than the dismissal order in *Coltec*. Moreover, the plaintiff in *Coltec* made the same preclusion arguments as

26

the Nation does here. And the Third Circuit had little difficulty holding that "collateral estoppel is common to all judgments." *Id.* Holding that the preclusive effect of judgments constituted a prospective application would render "the Rule's requirement of 'prospective application' [] meaningless." *Id.* The Nation's attempt to distinguish *Coltec* merely underlines its persuasiveness to this case.

The Nation next claims that the Fifth Circuit parted ways from the other circuits and held that an order dismissing a case has a prospective application "where the dismissal 'would bar a new and independent action ... reasserted on the basis of the alleged changes in controlling law.'" Osage Br. at 33 (quoting *Kirksey v. City of Jackson*, 714 F.2d 42, 43 (5th Cir. 1983)). This misreads the Fifth Circuit's precedent on this issue. In *Kirksey*, the plaintiffs sought to reopen a case pursuant to Rule 60(b)(5) that had previously been dismissed. 714 F.2d at 42. The Fifth Circuit ultimately *affirmed* the denial of the plaintiffs' request because the dismissal was "not prospective in effect" given that it "does not bar future actions in which the plaintiffs can retry their claims in light of any significant" legal changes. *Id.* at 44–45. In dicta, that court suggested that a dismissal order would have a prospective application if it "denie[d] the plaintiffs the right to retry their claims in light of the changes in the statutory and decisional law applicable to their action." *Id.* at 43. But, as dicta, this language was never binding, even within the Fifth Circuit. And the Fifth Circuit did not cite a single authority for this

proposition. Moreover, the Nation concedes that "*Kirksey* has been criticized as over-broad in some cases." Osage Br. at 33.

Beyond criticism, the Fifth Circuit itself went a different way when this question was squarely presented to it. In *Picco v. Global Marine Drilling Company*, the Fifth Circuit considered a plaintiff's attempt to vacate a final order dismissing its case. 900 F.2d 846, 849 (5th Cir. 1990). There, the Fifth Circuit held that Rule 60(b)(5) was "inapplicable" because "[i]t applies only to final judgments with prospective application." *Id.* at 851. That the dismissal "precludes relitigation of the issues it decided" "clearly is not enough" to qualify as prospective application. *Id.* The Fifth Circuit then outlined that *Kirksey* "does not hold to the contrary." *Id.* at 849 n.8. Thus, the Fifth Circuit also applies the *Twelve John Does* standard, regardless of what *Kirksey* may have indicated in passing. Under Rule 60(b)(5), the Nation must be able to point to a prospective application from the underlying judgment beyond its preclusive effect.

Faced with the extensive body of precedent against its position, the Nation strains to argue that the Supreme Court upended this line of precedent in *Agostini v. Felton*, 521 U.S. 203 (1997). The Supreme Court did no such thing. *Agostini* concerned the Supreme Court's shifting Establishment Clause jurisprudence. In *Aguilar v. Felton*, 473 U.S. 402 (1985), the Court "held that the Establishment Clause of the First Amendment barred the city of New York from sending public school teachers into parochial schools to provide remedial education to disadvantaged children." *Agostini*,

28

521 U.S. at 208. After that ruling, the district court in the case entered a permanent injunction prohibiting city officials from administering the program. *Id.* Twelve years later, those enjoined officials sought relief under Rule 60(b)(5) from that injunction on the ground that the Court's subsequent Establishment Clause jurisprudence dictated that *Aguilar* was no longer good law. *Id.* at 208–09.

The Court agreed with the city officials. It held that its understanding of the Establishment Clause had "significantly changed" to a degree that the school program would be considered permissible if the case was now decided in the first instance. *Id.* at 237 (citations omitted). Following this determination, the Court was "only left to decide whether this change in law entitles petitioners to relief under Rule 60(b)(5)." *Id.* The Court held that petitioners were entitled to Rule 60(b)(5) relief, but only after outlining several limitations on the effect of its holding. The Court emphasized that the underlying injunction it vacated imposed "millions of dollars" of costs on the enjoined party. *Id.* at 240. And, critically, the Court underscored the prospective application requirement in Rule 60(b)(5) when it highlighted that in the past the Court had granted relief under the rule "when the party *seeking relief from an injunction or consent decree* can show 'a significant change either in factual conditions or in law.'" *Id.* at 215 (emphasis added) (citations omitted).

The necessity of an order's prospective application was further reinforced by the Supreme Court's response in *Agostini* to the dissent's charge that granting relief would

open the floodgates to reconsider old cases. *Id.* at 238. In riposte, the majority emphasized that the pertinent clause in Rule 60(b)(5) "applies by its terms only to 'judgment[s] hav[ing] prospective application." *Id.* at 239. For judgments that lack a prospective application, "the only remaining avenue for relief" on the basis of "[i]ntervening developments in the law" is Rule 60(b)(6). *Id.* The Court summed up this line of reasoning by flatly declaring that its "decision will have no effect outside the context of ordinary civil litigation where the propriety of continuing prospective relief is at issue." *Id.* And in *Agostini*, there was an injunction that was still in effect. *Id.*

Accordingly, *Agostini* supports the district court's decision to deny relief under Rule 60(b)(5). *Agostini* makes clear that relief under that rule is limited to judgments that have a continuing prospective application. *Id.* at 239. If the Osage Nation were correct that an ongoing preclusive effect counts as a prospective application, *Agostini's* admonishment that mere changes in law do not provide a reason for relief under Rule 60(b)(5) absent some prospective application would make little sense. After all, court decisions always have preclusive effect. *Coltec Indus.*, 280 F.3d at 272. The *Irby* judgment itself did no more than affirm summary judgment in favor of Defendants on the Nation's claim for injunctive and declaratory relief regarding personal income tax. It imposed no ongoing obligation on any party, established no continuing supervisory role for any court, and required no future compliance monitoring of any kind. That is

30

precisely the type of judgment that, per *Agostini*, compels denying relief as outside the scope of Rule 60(b)(5). If Rule 60(b)(5) applies here, it would apply everywhere.

*Rufo v. Inmates of Suffolk County Jail*, 502 U.S. 367 (1992), which the Nation also cites, fails to support the Nation's claims. Osage Br. at 28. *Rufo* addressed a consent decree that imposed ongoing obligations on a county jail regarding conditions of confinement, including population caps and construction requirements the county was required to satisfy on a continuing basis. *Id.* at 371–75. The Supreme Court's discussion of a "flexible" standard for modifying such decrees in light of changed factual or legal circumstances was expressly premised on the decree's function as an ongoing instrument of institutional supervision. *Id.* at 380–84. *Rufo* stands for the proposition that, once a court is faced with a Rule 60(b) motion that falls within the prescribed categories, the court should employ a flexible approach in determining whether to modify an injunction. *Id.* at 380. *Rufo* does not mean that courts must be "flexible" when determining whether a particular dismissal has a prospective application. Thus, *Rufo* does not offer any basis for reading Rule 60(b)(5) to reach the *Irby* judgment, which compels no one to do or refrain from doing anything.

The Osage Nation further argues that the district court erred by not grappling with this Court's treatment of a district court's denial of a Rule 60(b)(5) motion in *Crow*

31

*Tribe of Indians v. Repsis* (*Repsis I*), 74 F.4th 1208 (10th Cir. 2023).[4] Osage Br. at 29–31. This argument overreads the holding of that case. *Repsis I* involved the treaty hunting rights of the Crow Tribe of Indians. 74 F.4th at 1210. The Tribe filed a declaratory action asking the district court for the District of Wyoming to hold that the Tribe possessed "an unrestricted right to hunt in the Bighorn National Forest." *Id.* In 1994, the district court held that the tribe's treaty rights had been extinguished by Wyoming's admission as a state. *Id.* That decision was affirmed by this Court. *Id.* This Court also affirmed the district court on two alternative grounds. *Id.* In a different case, many years later, the U.S. Supreme Court held that "the Tribe's treaty rights had not been extinguished by Wyoming's admittance as a state." *Id.* (citing *Herrera v. Wyoming*, 587 U.S. 329, 337 (2019)). Following that decision, the Tribe moved for relief from the 1994 district court decision pursuant to Rule 60(b). *Id.* at 1211. The district court denied the motion on the grounds "that it lacked the power to grant relief from [the 1995 Tenth Circuit decision] because [the Tenth Circuit] had relied on alternative grounds for affirmance." *Id.* This Court held that the district court erred by not considering the Rule

---

[4] For the sake of consistency, this brief will follow the Nation's practice of referring to the 2023 Tenth Circuit decision as *Repsis I*. Similarly, it will refer to the district court decision following this Court's remand in that case as *Repsis II*. In *Repsis I*, the Court refers to the original district court decision in 1994 as *Repsis I* and the Tenth Circuit's decision affirming that decision as *Repsis II*. This brief will refer to those decisions as the 1994 district court decision and the 1995 Tenth Circuit decision respectively.

60(b) issue on the merits and remanded the case for the district court to determine whether relief was appropriate. *Id.* at 1220, 1222.

Notably, this Court never addressed whether the challenged 1995 judgment had prospective application within the meaning of Rule 60(b)(5). Instead, the Court merely addressed whether a district court abuses its discretion by declining even to consider a Rule 60(b)(5) motion on the theory that the district court lacked authority to reconsider a judgment this Court had affirmed on alternative grounds. *Id.* at 1219. Here, the district court complied fully with *Repsis I.* The district court considered the Rule 60(b)(5) motion at length before concluding, on the merits of the prospective-application question, that Rule 60(b)(5) does not extend to a judgment lacking any injunctive or supervisory component. P.A. Vol. II at 255–62. And, of course, a situation where the U.S. Supreme Court has expressly overruled a district court's holding in regard to the very party in question is vastly different from the situation here, where *McGirt* did not involve the Osage Nation, its treaties, or its unique history.

The district court's decision to grant Rule 60(b)(5) relief following remand in *Crow Tribe of Indians v. Repsis* (*Repsis II*), No. 1:92-CV-01002, 2024 WL 1478580, at *10 (D. Wyo. Mar. 28, 2024), does not counsel in the Nation's favor here, either. The district court did not consider whether Rule 60(b)(5) allows relief when there is no injunction or consent judgment before granting relief. It appears that this argument was not presented by either of the parties. Indeed, as the district court below observed, the *Repsis*

*II* court acknowledged that the original holding's preclusive effect was no longer at issue before granting relief. P.A. Vol. II at 258 n.4. And the district court's decision was not appealed—and thus not subject to this Court's review. So it has very limited value here, if any, especially, again, when the underlying issue was one where the Supreme Court issued an intervening and contrary ruling on the exact claim the district court had previously considered and rejected.

Here, the court below also noted that "[t]here is nothing to preclude the Osage Nation from filing a new iteration of its original suit and arguing that the Court's prior precedent is no longer good law.*" Id.* at 260. The Nation asserts that this possibility is illusory because the Nation would be precluded from filing such a claim. Osage Br. at 34. But in *Herrera*, the Supreme Court clarified that when there is a "change in the applicable legal context" there is an exception to issue preclusion that occurs when "applying issue preclusion in changed circumstances may not 'advance the equitable administration of the law.'" 587 U.S. at 343 (citation modified). Thus, a plaintiff bringing a new suit asserting that the Osage Nation has not been disestablished would likely have to demonstrate (1) that there has been a substantial change in law affecting the pertinent legal question, and (2) that it would be inequitable to preclude the plaintiff from bringing the challenge. *Id.* Those are not easy hurdles to clear, and Defendants do not concede the point, but it is possible to do so. The Nation's bald assertion to the contrary is no reason to soften Rule 60(b)'s procedural requirements.

34

**B.    The district court correctly held that Rule 60(b)(6) does not authorize relief because *McGirt* and *Irby* do not arise from the same transaction or occurrence.**

Rule 60(b)(6) permits relief "for any other reason that justifies relief," a residual category this Court has described as available only in "extraordinary circumstance[s]." *Pierce v. Cook & Co.*, 518 F.2d 720, 723 (10th Cir. 1975) (en banc); *Cashner*, 98 F.3d at 579. Indeed, a "very strict interpretation of Rule 60(b) is essential if the finality of judgments is to be preserved." *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (citation omitted). And Rule 60(b)(6) relief is available "only when Rules 60(b)(1) through (b)(5) are inapplicable." *Kemp v. United States*, 596 U.S. 528, 533 (2022).

The "extraordinary circumstances" test is stringent. *BLOM Bank SAL v. Honickman*, 605 U.S. 204, 212 (2025). The Supreme Court first found such a circumstance in *Klapprott v. United States*, 335 U.S. 601, 609 (1949). There, the Court was faced with a petitioner's attempt to vacate a default judgment entered in a denaturalization proceeding. *See id.* at 603 (opinion of Black, J.). The Court described the petitioner's predicament as "an extraordinary situation." *Id.* at 613. At the time of the denaturalization proceedings, the petitioner was "in jail ..., weakened from illness, without a lawyer in the denaturalization proceedings or funds to hire one," and "disturbed and fully occupied in efforts to protect himself against the gravest criminal charges" in separate proceedings. *Id.* at 613–14. In the Court's view, he was "no more able to defend himself" in the proceedings "than he would have been had he never

35

received notice of the charges." *Id.* at 614. The Court therefore held that relief under Rule 60(b)(6) was justified. *Klapprott*, in short, involved a petitioner who was fundamentally incapable of defending himself from an adverse proceeding. Nothing that like that exists here whatsoever.

The Osage Nation's Rule 60(b)(6) argument fails because, even assuming *arguendo* that *McGirt* implicitly repudiated *Irby*, "a change in case law doesn't justify vacatur under Rule 60(b)(6)." *FTC*, 91 F.4th at 1049; *Johnston v. Cigna Corp.*, 14 F.3d 486, 497 (10th Cir. 1994) ("[A] change in the law or in the judicial view of an established rule of law does not justify relief under Rule 60(b)(6)."); *Collins v. City of Wichita*, 254 F.2d 837, 839 (10th Cir. 1958). There are two exceptions to this rule, neither of which applies to this case. The first exception arises "when the change in case law arises between decisions in [factually] related cases." *Elite IT Partners*, 91 F.4th at 1049. Under such circumstances, Rule 60(b)(6) relief may be warranted "to ensure consistency in the treatment of cases 'arising out of the same transaction or occurrence.'" *Id.* (quoting *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975) (en banc)). Second, a change in case law may justify vacatur "when the earlier ruling hasn't become final" because "courts generally retain power to revise rulings before entering a judgment." *Id.*

In *FTC,* this Court recently confirmed that, once final judgment has been entered, a subsequent change in case law "doesn't support vacatur when the cases are unrelated." 91 F.4th at 1049. In that case, the appellants settled a lawsuit brought against

36

them by the FTC through a stipulated judgment which provided equitable monetary relief under Section 13(b) of the Federal Trade Commission Act. *Id.* at 1044. Approximately one year after the stipulated judgment was entered, the Supreme Court held in *AMG Capital Management, LLC v. FTC*, 593 U.S. 67 (2021), that Section 13(b) of the Federal Trade Commission Act does not allow equitable monetary relief. *Id.* at 1044–45. The appellants then moved to vacate the stipulated judgment based on *AMG*. The district court denied appellants' motion to vacate, and this Court affirmed, holding that "the Supreme Court's issuance of *AMG* bears no factual relationship to our case. So *AMG* doesn't warrant vacatur under Rule 60(b)(6)." *Id.* at 1052.

This case falls under *either* exception to the general rule that subsequent case law does not warrant vacatur under Rule 60(b)(6), which by itself is enough not to rely on those exceptions. The first exception obviously does not apply because *McGirt* did not arise out of the same transaction or occurrence as *Irby*. The Osage Nation and Creek Nation are different tribes with different histories and different treaties. The second exception is equally inapplicable because there is no question that the underlying judgment is a final judgment on the merits.

The Osage Nation devotes substantial effort to arguing that *Elite IT's* factually related requirement should be read as merely "one circumstance in which" Rule 60(b)(6) relief was granted. Osage Br. at 37–39. But this is not a plausible interpretation of *Elite IT*. There, this Court flatly stated that "a change in case law doesn't justify vacatur under

37

Rule 60(b)(6)." *Elite IT*, 91 F.4th at 1049. It is hard to be clearer than that. And the Court followed that declaration by listing the only two situations where Rule 60(b)(6) relief is appropriate: "1. when the change in case law takes place in a factually related case or 2. when the change precedes issuance of a final order." *Id*. *Elite IT* is not an outlier on this point. Previously this Court had held that "[a]bsent a post-judgment change in the law in a factually-related case, however, 'we have held that a change in the law or in the judicial view of an established rule of law' does not justify relief under Rule 60(b)(6)." *Johnston v. Cigna Corp.*, 14 F.3d 486, 497 (10th Cir. 1993) (quoting *Van Skiver v. United States*, 952 F.2d 1241, 1245 (10th Cir. 1991)); *see also Collins*, 254 F.2d at 839 ("A change in the law or in the judicial view of an established rule of law is not such an extraordinary circumstance which justifies such relief.").

The narrowness of *Elite IT's* standard can be seen by examining *Pierce*, which is the case from which both *Elite IT* and this Court's broader Rule 60(b)(6) jurisprudence derive. *Pierce* arose from a single automobile accident that produced two separate lawsuits from different passengers. 518 F.2d at 721–22. One of the cases was removed to federal court on diversity grounds, and the other case remained in Oklahoma state court. *Id*. Both suits required application of the same body of Oklahoma tort law to the same accident and the same facts. The federal case was decided first based on the court's resolution of a state law question. *Id*. at 722–23. The state court case was later decided differently because the Oklahoma Supreme Court interpreted the state law differently.

38

*Id.* When the losing party moved for relief under Rule 60(b)(6) from the federal judgment, the court held that the judgment could be reopened under Rule 60(b)(6) because "[t]he federal courts in which plaintiffs were forced to litigate have given them substantially different treatment than that received in state court by another injured in the same accident." *Id.* at 723. The two cases were as similar as cases could be. They literally involved the same accident, the same conduct, and the same legal issues.

*Collins* provides a good example of the limit of *Pierce's* reach. In *Collins*, this Court had previously "upheld the validity" of a Kansas statute relating to notice requirements for condemnation proceedings. 254 F.2d at 838. A little over one year later, in a different case involving the validity of the same statute, the Supreme Court held that the notice requirements in the statute were insufficient to comply with the Due Process Clause of the Fourteenth Amendment. *Id.* This development led the appellants in *Collins* to move to vacate the judgment pursuant to Rule 60(b). *Id.* And yet this Court still held that relief was not appropriate under Rule 60(b)(6). *Id.*

*McGirt* and *Irby* do not arise out of the same transaction or occurrence. *McGirt* involved the removal of the Creek Nation to Indian Territory, a distinct set of nineteenth-century treaties, and an allotment statute Congress enacted for the Creek Nation specifically. 591 U.S. at 904. *Irby* involves a completely different tribe, different treaties, different statutes, and a different history. Indeed, it is well-known that the Osage Nation is unique and different from other tribes; for example, in how "the

39

mineral estate" of the Osage Nation was severed "from the surface estate of the reservation and placed [] in trust for the tribe." *Irby*, 597 F.3d at 1120.

With the correct standard in mind, the Nation's own account of how *McGirt* relates to *Irby* actually supports the conclusion that Rule 60(b)(6) is unavailable. The Nation describes the two cases as sharing several traits: both "apply the disestablishment framework of *Solem*," both involve "federally recognized tribes whose reservations were established by treaty in the nineteenth century," both involve "allotment acts enacted near the turn of the twentieth century," and both "turn on the role of extratextual evidence." Osage Br. at 39–40. But all that establishes is that both cases involved determinations of whether an Indian reservation has been disestablished. It does not demonstrate that the two cases contain the same factual matter as required by *Elite IT*. Take for example two different suits alleging negligence out of two *different* car wrecks. Both cases will conduct the same analysis by analyzing the same type of facts against the backdrop of the same tort law. But that analytical similarity does not mean that the cases arise out of the same transaction or occurrence. The two cases involve different wrecks with different fact patterns. The same applies here. Two different tribes with two different histories cannot qualify as the same factual situation.

The Nation's own brief reinforces this point. Arguing the merits, the Nation contends that "[t]he Osage allotment provisions are, if anything, more protective of Reservation integrity than the Creek provisions *McGirt* held insufficient," pointing to

40

differences in homestead-acreage restrictions, alienation periods, and mineral-estate treatment. Osage Br. 22–23. The Nation cannot have it both ways. Separate statutes that are meaningfully different for purposes of the merits cannot also be "factually related" as required by *Elite IT*. 91 F.4th at 1049.

The Nation argues that the denial of its Rule 60(b)(6) motion would "gut [the] *Repsis* cases," Osage Br. at 38, but that makes little sense. As an initial matter, the District of Wyoming's disposition of *Repsis II* is not binding on this Court in any sense of the word. Regardless, *Repsis II's* vacatur based on Rule 60(b)(6) is not inconsistent with denial here. In *Repsis II*, the district court cited *Elite IT* and noted that "new Supreme Court opinions can sometimes support vacatur under Rule 60(b)(6)." *Repsis II*, 2024 WL 1478580, at *11 (quoting *Elite IT*, 91 F.4th at 1051). The court found that this "narrow exception" applied to the situation before it. *Id.* Given that *Elite IT* limits vacatur based on a change in Supreme Court law to either "when the change in case law takes place in a factually related case" or "when the change precedes issuance of a final order[,]" 91 F.4th at 1049, the District of Wyoming must have decided that that the factually related case exception applied. This conclusion makes sense because the intervening court case, *Herrera v. Wyoming*, involved the Supreme Court's determination of the same tribe's treaty rights that were at issue in *Repsis*. *See Repsis I*, 74 F.4th at 1210.

The Nation attempts to get around this fact by referencing *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999), which involved a different tribe than

41

*Herrera* and *Repsis*. Osage Br. at 38. But *Mille Lacs* was not the case that changed the operative law in *Repsis*. It was merely cited by the Supreme Court when it revisited and clarified the *Repsis's* tribe's treaty rights. *See Herrera*, 587 U.S. at 343–45 (discussing *Mille Lacs* in the course of construing the Crow Treaty). *Herrera* and *Repsis* were factually related. They involved the same state, tribe, treaty, history, and federal law. Here, to the contrary, *McGirt* and *Irby* involve different tribes with different histories with the federal government. *McGirt* never mentions the Osage Nation, the 1872 Osage Act, or the Osage Allotment Act, and instead construes an entirely distinct set of treaties and a distinct allotment statute negotiated with a different tribe. *See McGirt*, 591 U.S. at 932 ("Each tribe's treaties must be considered on their own terms, and the only question before us concerns the Creek.").

In sum, *McGirt* is not factually related to the present case and the district court was correct to deny relief under Rule 60(b)(6). The Nation's related contention that *Irby* "exceeded the Tenth Circuit's Article III authority," Osage Br. at 42–48, adds nothing. A court does not exceed the judicial power by deciding a question within its jurisdiction incorrectly—otherwise every erroneous judgment would be void. The Supreme Court has confined relief from purportedly void judgments to the rare instances of a jurisdictional defect or a violation of due process that deprives a party of notice or the opportunity to be heard. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 271 (2010). Neither is alleged here. Federal courts unquestionably have jurisdiction to decide

42

whether Congress has disestablished a reservation—*McGirt* itself decided exactly that question. An asserted error on the merits is a claim of legal error, not an excess of Article III power, and relabeling the Nation's change-in-law argument in constitutional terms does not transform it into an extraordinary circumstance under Rule 60(b)(6).

### III. This Court Should Not Resolve the Disestablishment Question on the Merits in the First Instance.

If this Court were to disagree with the district court's procedural ruling that Rule 60(b) is inapplicable in this case, it should remand the case back for the district court to make a ruling in the first instance on the merits. The district court expressly declined to reach the merits of the Osage Nation's disestablishment argument, resting its decision entirely on Rule 60(b)'s procedural requirements. P.A. Vol. II at 262 ("The Court need not, and does not, reach the merits of the Osage Nation's argument."). That is this Court's normal practice. In *Repsis I*, this Court stated that "[b]ecause we hold that the district court erred in concluding that it was without authority to rule on the Tribe's Rule 60(b)(6) motion, we believe it is prudent to vacate the district court's decision and remand to allow the district court to evaluate the merits of the Tribe's Rule 60(b) motion in the first instance." 74 F.4th at 1221–22. And this Court made that decision despite the fact that both parties asked the Court to decide the issue in the first instance. *Id.* at 1222. This Court took the same approach in *Johnson v. Spencer*, when it remanded for further proceedings after determining that a court abused its discretion by denying a Rule 60(b)(6) motion. 950 F.3d 680, 703 (10th Cir. 2020). There, the Court emphasized

43

that it did "not take any position concerning whether [the appellant] is entitled to Rule 60(b)(6) relief." *Id.* This precedent comports with the Supreme Court's statement that "the trial court 'is in a much better position to pass upon the issues presented'" in a Rule 60(b) motion. *Standard Oil Co. of Cal. v. United States*, 429 U.S. 17, 19 (1976).

Although the Osage Nation asks this Court to address the merits in the first instance, it does not provide a single example of an instance when this Court—or any court—has decided the merits of a Rule 60(b) motion for the first time after the district court has denied it for procedural reasons. Instead, the Nation points to the importance of the question to the tribe. But tribal sovereignty was at issue in *Repsis* and this Court still remanded for the district court to make a first instance merits determination. *Repsis I*, 74 F.4th at 1210, 1222. And the Nation's complaint that it "has already waited nearly six years since *McGirt* was decided[,]" Osage Br. at 51, holds little water—to say the absolute least—since it is the party that waited more than four years to pursue Rule 60(b)(6) relief.

## IV.    *Irby* **Remains Good Law.**

If this Court were to go to the merits, it should hold that *Irby* remains good law even in light of *McGirt*. *McGirt* disclaimed any application to the Osage Nation. *See McGirt*, 591 U.S. at 932 ("Each tribe's treaties must be considered on their own terms, and the only question before us concerns the Creek."). And *McGirt* did not purport to establish a new legal test for disestablishment. *McGirt*, that is, did not repudiate the *Solem*

test utilized by this Court in *Irby*. Rather, *McGirt* held that the *Solem* test, which allows courts to consider extratextual evidence of disestablishment, is useful where "an ambiguous statutory term or phrase emerges" or if "any of the relevant statutes [] could plausibly be read as an Act of disestablishment." *Id.* at 914.

*Irby* is consistent with *McGirt's* instruction that the *Solem* test should only be employed where the relevant statutes are ambiguous. *Irby* found that the "operative language of the statute does not unambiguously suggest diminishment or disestablishment of the Osage reservation." *Irby*, 597 F.3d at 1124. This statement, through its use of the double-negative ("does not unambiguously suggest"), indicates that this Court found the relevant statutes ambiguous as to disestablishment. If there were any doubt as to the meaning of the double-negative, the next sentence of *Irby* makes clear that this Court found the statutes ambiguous: "If the statute is ambiguous, we turn to the circumstances surrounding the passage of the act ..." *Id.* After finding the statute "not unambiguous," this Court turned to consider the circumstances surrounding the passage of the act, including "[t]he legislative history and negotiation process." *Id.* at 1125. Thus, in *Irby* this Court did exactly what *McGirt* now requires; the Court found the relevant statutes ambiguous before turning to circumstances surrounding their passage to resolve the ambiguities. Accordingly, *McGirt* does not repudiate *Irby's* reliance on the *Solem* test or consideration of extratextual evidence in the face of statutory language which is "not unambiguous." In fact, *McGirt*

45

acknowledges that consideration of extra-textual evidence is sometimes necessary to interpret ambiguous statutory terms. 591 U.S. at 914.

It is also worth emphasizing that this Court was *affirmed* by *McGirt*, not reversed. In *Murphy*, utilizing the *Solem* test, this Court held that the Creek Reservation was never disestablished by Congress. 875 F.3d 896, 921 (10th Cir. 2017). That decision was eventually affirmed by *McGirt*. And yet *Murphy* does not overrule, criticize, or question *Irby*'s analytical approach. To the contrary, *Murphy* cited *Irby* in its description of Tenth Circuit precedent. *Murphy*, 875 F.3d at 931, 954. The Nation points out that *Murphy* observed that *Irby* relied on "step two evidence" to find disestablishment "despite an absence of clear textual evidence." *Murphy*, 875 F.3d at 954; *see* Osage Br. at 22, 44. But that observation is descriptive, not disapproving: it recounts that *Irby* proceeded to *Solem*'s second step—which is precisely what *Solem* permits when the statutory text is ambiguous. Under the Nation's theory, this Court must have contradicted itself when it issued *Murphy* after *Irby*. That is the opposite of this Court's practice. *In re Smith*, 10 F.3d 723, 724 (10th Cir. 1993) ("We are bound by the precedent of prior panels absent *en banc* reconsideration or a superseding contrary decision by the Supreme Court."). To hold for the Nation here, on this point, would require this Court to find a contradiction in this Court's precedent where none exists. Going further, it would require this Court to accuse a prior panel of this Court of violating the principle that only *en banc* panels can change circuit precedent when that panel expressly disclaimed doing so. *Murphy*,

46

875 F.3d at 932 ("we are bound by this precedent"). This Court should decline to take this bumpy road.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court.

## STATEMENT ON ORAL ARGUMENT

The district court's denial of the Nation's motion for relief on procedural grounds was plainly correct. Oral argument is not necessary to resolve the straightforward procedural flaws in the Nation's motion.

Respectfully submitted,

*s/Garry M. Gaskins, II*
GARRY M. GASKINS, II
  *Solicitor General*
WILL FLANAGAN
  *Assistant Solicitor General*

OFFICE OF ATTORNEY GENERAL
  STATE OF OKLAHOMA
313 N.E. 21st Street
Oklahoma City, OK 73105
Phone: (405) 521-3921
Garry.Gaskins@oag.ok.gov
William.Flanagan@oag.ok.gov
*Counsel for Defendants-Appellees*

47

## CERTIFICATE OF COMPLIANCE

This brief complies with the typeface requirements of Fed. R. App. P. 32 because it was prepared in a proportionally spaced font (Garamond, 14-point) using Microsoft Word 2016. The document complies with the type-volume limitation of Fed. R. App. P. 32, because it contains 11,622 words, excluding the parts exempted.

s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II

## CERTIFICATE OF DIGITAL SUBMISSION

All required privacy redactions have been made as required by 10th Cir. R. 25.5 and the ECF Manual. Additionally, this filing was scanned with the most updated Crowdstrike antivirus software.

s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II

## CERTIFICATE OF SERVICE

I certify that on July 8, 2026, I caused the foregoing to be filed with this Court and served on all parties via the Court's CM/ECF filing system. No paper copies are required pursuant to 10th Cir. R. 31.5.

s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II