**[ORAL ARGUMENT REQUESTED]**
No. 26-5038

**IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**

---

OSAGE NATION, a federally recognized Indian tribe,
*Plaintiff-Appellant,*

v.

MARK WOOD, in his official capacity as Chairman of the Oklahoma
Tax Commission; SHELLY PAULK, in her official capacity as Vice
Chairman of the Oklahoma Tax Commission; and CHARLES PRATER,
in his official capacity as Secretary of the Oklahoma Tax Commission,
*Defendants-Appellees.*

---

On Appeal from the United States District Court for the
Northern District of Oklahoma
No. 4:01-cv-00516-JDR-MTS (Hon. John D. Russell)

---

**REPLY BRIEF OF APPELLANT OSAGE NATION**

---

Eugene Bertman, OBA #19406
TALLEY, TURNER, STICE & BERTMAN
130 E. Eufaula Street
Norman, Oklahoma 73069
(405) 364-8300
gbertman@ttsblaw.com

Counsel for Appellant Osage Nation

## TABLE OF CONTENTS

Introduction .......................................................................................... 1

I.  The Nation's Motion Was Filed Within a Reasonable Time. ............... 5

II.  Rule 60(b)(5) Reaches the *Irby* Judgment. ..................................... 10

   A.  The Rule's text is not confined to injunctions and consent decrees. ................................................................................................. 10

   B.  *Repsis I* controls and forecloses the rule the State defends. .......... 13

   C.  *Agostini* and the equities support relief; "preclusion is common to all judgments" does not describe *Irby*. ................................................ 14

   D.  The State's "file a new suit" alternative is both illusory and legally irrelevant. ......................................................................................... 16

III.  Rule 60(b)(6) Independently Authorizes Relief. ............................. 17

   A.  *Elite IT* governs an ordinary change in case law and applies *Pierce* not narrows it. ...................................................................... 18

   B.  That Osage allotment provisions are *more* protective of Reservation status favors vacating the *Irby* judgment not upholding it. ................................................................................................... 19

   C.  This Court's judgment disestablishing the Reservation on the basis of extratextual evidence alone was an exercise of authority that belongs solely to Congress. ................................................................ 21

   D.  The Federal Indian Law overlay removes this case from the realm of ordinary judgments. ...................................................................... 24

   E.  Extraordinary circumstances are compounded to support vacatur of the *Irby* judgment. ....................................................................... 26

IV.  *Irby* Cannot Be Reconciled With *McGirt,* and This Court Should Not Permit it to Deliver the "Final Push." ........................................... 27

V.  This Court Should Reach the Merits. ............................................... 29

Conclusion ......................................................................................... 30

# TABLE OF AUTHORITIES

**Cases**

*Agostini v. Felton*, 521 U.S. 203 (1997) ................................................... 14

*Arizona v. California*, 460 U.S. 605 (1983) ............................................. 14

*Bosse v. State*, 499 P.3d 771 (Okla. Crim. App. 2021) ............................. 9

*Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173 (10th Cir. 2010) ............................................... 4, 25

*Buck v. Davis*, 580 U.S. 100 (2017) ........................................................ 19

*Collins v. City of Wichita*, 254 F.2d 837 (10th Cir. 1958) ................. 18, 21

*Coltec Indus. v. Hobgood*, 280 F.3d 262 (3d Cir. 2002) ..................... 11, 15

*Crow Tribe of Indians v. Repsis*, 2021 WL 3185778 (D. Wyo. July 1, 2021) ..................................................................................... 7

*Crow Tribe of Indians v. Repsis*, 2024 WL 1478580 (D. Wyo. Mar. 28, 2024) ................................................................................. 14, 20

*Crow Tribe of Indians v. Repsis*, 74 F.4th 1208 (10th Cir. 2023) 3, 5, 6, 7, 8, 9, 13, 14

*Dowell v. Bd. of Educ. of Okla. City Pub. Schs.*, 8 F.3d 1501 (10th Cir. 1993) ..................................................................................... 11

*Elkins v. Comfort*, 392 F.3d 1159 (10th Cir. 2004) .................................. 6

*FTC v. Elite IT Partners, Inc.*, 91 F.4th 1042 (10th Cir. 2024) . 17, 18, 20, 21

*Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25 (1965) ............... 30

*Herrera v. Wyoming*, 587 U.S. 329 (2019) ................................... 15, 16, 20

*Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023) ................... 9, 28

*In re Smith*, 10 F.3d 723 (10th Cir. 1993) .............................................. 29

*In re Terrorist Attacks on September 11, 2001*, 741 F.3d 353 (2d Cir. 2013) ..................................................................................... 30

*Johnston v. Cigna Corp.*, 14 F.3d 486 (10th Cir. 1993) ........................ 21

*Kemp v. United States*, 596 U.S. 528 (2022) ................................... 17, 26

ii

*Kirksey v. City of Jackson*, 714 F.2d 42 (5th Cir. 1983) ..........................12

*Lairsey v. Advance Abrasives Co.*, 542 F.2d 928 (5th Cir. 1976)..............8

*Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847 (1988)...19, 26

*McCauley v. State*, 548 P.3d 461 (Okla. Crim. App. 2024).......2, 7, 13, 16

*McClanahan v. Ariz. State Tax Comm'n*, 411 U.S. 164 (1973) ..............24

*McGirt v. Oklahoma*, 591 U.S. 894 (2020) 1, 2, 3, 4, 6, 7, 9, 11, 17, 18, 19, 20, 21, 22, 24, 25, 26, 27, 28, 29, 30

*Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999) ...........................................................................................................20

*Murphy v. Royal*, 875 F.3d 896 (10th Cir. 2017) ........................27, 28, 29

*Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505 (1991) ...........................................................................................24

*Okla. Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114 (1993)...............24

*Oklahoma v. Castro-Huerta*, 597 U.S. 629 (2022) .................................28

*Oliver v. City of Shattuck ex rel. Versluis*, 157 F.2d 150 (10th Cir. 1946) ...........................................................................................................16

*Osage Nation v. Irby*, 597 F.3d 1117 (10th Cir. 2010). 1, 2, 4, 7, 9, 10, 11, 12, 13, 14, 16, 17, 18, 20, 21, 22, 23, 24, 25, 26, 27, 29, 30, 31

*Osage Nation v. Oklahoma ex rel. Okla. Tax Comm'n*, 260 F. App'x 13 (10th Cir. 2007) ..................................................................................13

*Pennsylvania v. Wheeling & Belmont Bridge Co.*, 59 U.S. 421 (1856)...10

*Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975) (en banc)..17, 18, 19, 23, 30

*Sec. Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062 (10th Cir. 1980)..7

*Servants of the Paraclete v. Does*, 204 F.3d 1005 (10th Cir. 2000).........22

*Solem v. Bartlett*, 465 U.S. 463 (1984).......................................21, 27, 30

*Twelve John Does v. District of Columbia*, 841 F.2d 1133 (D.C. Cir. 1988) ...........................................................................................................10

*United States v. Hopson*, 150 F.4th 1290 (10th Cir. 2025).......................9

*United States v. Melot*, 712 F. App'x 719 (10th Cir. 2017) ....................11

*United States v. Swift & Co.*, 286 U.S. 106 (1932) .................................11

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010) ........23

*Williams v. Lee*, 358 U.S. 217 (1959) .....................................................24

*Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281 (10th Cir. 2005).......5

**Statutes and Rules**

28 U.S.C. § 2106 .......................................................................................29

Fed. R. App. P. 32(a)(5), (6), (7)............................................................32

Fed. R. Civ. P. 60(b)(5) ..................................... 1, 5, 10, 13, 16, 17, 20, 30

Fed. R. Civ. P. 60(b)(6) ........................1, 17, 18, 19, 20, 21, 22, 23, 26, 30

Fed. R. Civ. P. 60(c)(1).............................................................................6

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3 ...................................................................25

U.S. Const. art. VI, cl. 2 .......................................................................25

## Introduction

Oklahoma Tax Commission ("State") does not defend *Osage Nation v. Irby*, 597 F.3d 1117 (10th Cir. 2010) ("*Irby*") as good law as much as it defends the walls around it.[1] It offers no reason *Irby* should stand after *McGirt v. Oklahoma*, 591 U.S. 894 (2020) became the law of the land and the reservations of the Muscogee (Creek), Cherokee, Choctaw, Chickasaw, Seminole, and other Oklahoma Nations were held intact under *McGirt*'s disestablishment standard. The State identifies no word of any Act of Congress disestablishing the Osage Nation Reservation ("Reservation"), yet asks this Court to hold no court may ever correct the *Irby* judgment: not through Rule 60(b)(5), because the judgment names no injunction; not through Rule 60(b)(6), because *McGirt* and *Irby* involved different tribes; and not through a new suit, because *Irby* would preclude it.[2] The record of that last position is the State's own:

---

[1] The State says *Irby* remains "good law" because *McGirt* "disclaimed any application" of *Irby*. *See* Br. of Appellees at 44, Doc. 21 at 51. That was hardly a disclaimer, and the State's claim that *McGirt* established no "new legal test for disestablishment" fares no better. Br. of Appellees at 44–46, Doc. 21 at 51–53. Even the *McGirt* dissent recognized that the Court "announce[d] a new approach" to determining whether Congress disestablished a reservation. 591 U.S. at 946–47 (Roberts, C.J., dissenting).

[2] The State says only that a new suit is "possible" while expressly reserving its defenses: "Those are not easy hurdles to clear, and Defendants do not concede the point, but it is possible to do so." Br. of Appellees at 34, Doc. 21 at 41. The district court offered no more, noting only that "nothing [] preclude[s]" a new iteration of the

Oklahoma's Attorney General, counsel on the State's brief, invoked *Irby*'s preclusive effect to deny an Osage defendant any *McGirt* review in *McCauley v. State,* 548 P.3d 461, 464-65 (Okla. Crim. App. 2024).

The State thus wields *Irby* as a sword—an affirmative, forward-looking bar it presses against the Nation and all in privity with it, in this Court and every other forum—while insisting in the same breath that *Irby* is a spent dismissal beyond the reach of Rule 60(b). A judgment cannot be a sword in the State's hand and, at the same instant, too inert to be touched in the Nation's.

That is a Catch-22, not a reading of Rule 60. *McGirt* holds that "[o]nly Congress can divest a reservation of its land and diminish its boundaries," and that Congress may not "tiptoe to the edge of disestablishment and hope that judges—facing no possibility of electoral consequences themselves—will deliver the final push." *McGirt*, 591 U.S. at 903. *Irby* delivered that push: finding no statutory text of disestablishment, it disestablished the Reservation anyway, from historians' opinions, officials' later statements, and demographic

---

suit. That is the illusion — the State dangles the preclusion defense it suggests the Nation could overcome, but will certainly pursue it, as it did in *McCauley v. State,* 548 P.3d 461 (Okla. Crim. App. 2024).

2

changes. Rule 60(b) exists precisely so that a judgment later revealed to rest on a legal method the Supreme Court forbids will not bind a party in perpetuity. The State's procedural objections do not withstand this Court's decision in *Crow Tribe of Indians v. Repsis*, 74 F.4th 1208 (10th Cir. 2023) ("*Repsis I*"), the text of the Rule, or *McGirt* itself.

This is not a run-of-the-mill Rule 60(b) motion, and the State's effort to shrink it into one should be rejected. The judgment the State would perpetuate does not bind a single person or company for a single transaction—it fixes the status of an entire people—generations of Osages, past, present, and not yet born. It would break the promise that set apart the Reservation as the Osage people's permanent home, curtail the Nation's criminal jurisdiction and its ability to provide for public safety, restrict eligibility for federal programs, and reduce a 1.4-million-acre Reservation to a patchwork of restricted allotments, historic villages, and scattered trust properties. Decisions of that magnitude belong to Congress, which has reshaped the federal-tribal relationship before—across the Osage treaties and the Acts of 1865, 1870, 1872, and 1906—and remains free to do so again.

Moreover, this is not a disguised second appeal of *Irby*. This Court did what we now know no court may do—extinguish the sovereign territorial status of a Nation—when that power belongs solely and only to Congress. "[T]he magnitude of a legal wrong is no reason to perpetuate it." *McGirt*, 591 U.S. at 934.

This case arises against a backdrop the State ignores: questions of federal Indian law must be decided against "the relevant Indian law context that shapes the analysis." *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino & Resort*, 629 F.3d 1173, 1182 (10th Cir. 2010). The State supplies none, answering a sovereignty-defining question with the vocabulary of ordinary civil finality while passing over the Indian canons of construction, the Osage treaty rights the Constitution protects, and Congress's exclusive authority to disestablish reservations.

One point frames everything that follows. In addressing the Nation's motion, the district court held Rule 60(b) was the wrong tool because there was "nothing to grant relief from," and denied it as "procedurally improper." Opinion and Order, App. 0262 (Dist. Ct. Dkt. 172). That premise is mistaken; there is a great deal to grant relief from, on two independent grounds. First, there is the overreach itself—a court's

4

intrusion into a function the Constitution assigns to Congress alone, extinguishing the sovereign territorial existence of a Nation and its Indian country—the ground on which Rule 60(b)(6) reaches this judgment. Second, *Irby's* ongoing prospective application: it continues, today and for generations, to redefine the Nation's territorial jurisdiction and to fix the criminal and civil authority of three sovereigns—the United States, Oklahoma, and the Nation—over its lands—the ground on which Rule 60(b)(5) reaches this judgment.  Denying relief in the mistaken belief that such a judgment lies beyond the Rule's reach rests on an erroneous view of the law and abuses discretion. *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005); see *Repsis I,* 74 F.4th at 1219. The State works to pull this Court into the equities of finality; the threshold error is simpler. Rule 60(b) exists to relieve a party of an unjust final judgment, and because the disestablishment question is a fully developed question of law, the Nation asks this Court to resolve it de novo.

## I.  The Nation's Motion Was Filed Within a Reasonable Time.

The State leads with timeliness, but the district court did not find the motion untimely. It denied relief solely as "procedurally improper."

Opinion and Order, App. 0262. The State's argument on timeliness thus presents an alternative ground for affirmance it must establish on a record the district court did not develop. *See Elkins v. Comfort*, 392 F.3d 1159, 1162 (10th Cir. 2004) (finding court may affirm on an alternative ground if issue was briefed, presents a legal rather than a factual question, and the record was adequately developed).

There was no fact-intensive inquiry into timeliness here. Rule 60(c)(1) requires only that a motion be filed "within a reasonable time." Inquiry into the movant's knowledge of the grounds for relief is "only one factor," and it must be weighed with other reasons for delay. *Repsis I,* 74 F.4th 1208, 1217. All factors favor the Nation in any event.

The reasons for the interval are not dilatory ones. First, the case for relief did not crystallize the day *McGirt* issued. Two developments converged before the Nation's motion was both viable and ripe. The first supplied the vehicle. When *McGirt* issued in 2020, the Nation faced a threshold obstacle: whether a district court may entertain a Rule 60(b) motion to vacate a judgment when this Court affirmed on reasoning broader than that of the district court. That particular obstacle was not

cleared until this Court decided *Repsis I* in July 2023.[3] *Id.* at 1219–22. Second, one reason no motion was filed sooner is connected with the injury itself. For years *Irby*'s disestablishment holding sat comparatively dormant. It hardened into a present, concrete injury when the State wielded it as a sword against applying the establishment framework of *McGirt* to Osage treaties and laws.

In the meantime, the Nation did not sleep on its rights; it pressed its position in Osage County district court and in the Oklahoma Court of Criminal Appeals ("OCCA"), honoring principles of comity. That avenue closed in April 2024, when the OCCA—at the State's urging—held that *Irby*'s preclusive effect barred any *McGirt* analysis of whether the Osage Reservation was intact. *McCauley*, 548 P.3d at 464-65. Only then were both the path open and the harm unmistakable.

That the path was unsettled weighs in the Nation's favor. *See Repsis I*, 74 F.4th at 1217 and *Sec. Mut. Cas. Co. v. Century Cas. Co.*, 621 F.2d 1062, 1067–68 (10th Cir. 1980) (weighing the confusion leading to

---

[3] When *McGirt* issued, the Nation had to review afresh the decade-long, 138-entry record and navigate the confusion created by a post-*McGirt* decision holding that a district court cannot grant a tribe's Rule 60(b) motion based on intervening precedent where the tribe seeks to vacate a judgment this Court affirmed on broader reasoning. *See Crow Tribe of Indians v. Repsis*, 2021 WL 3185778, *9 (D. Wyo. July 1, 2021).

the delay). A movant does not delay unreasonably by waiting until an intervening decision furnishes a realistic basis for relief. *Cf. Lairsey v. Advance Abrasives Co.*, 542 F.2d 928, 931–32 (5th Cir. 1976) (finding Rule 60(b) motion timely where "any realistic basis" for it "existed" only after an intervening decision altered the controlling law). Nor is the delay unreasonable when the Nation was pursuing relief in an alternative forum in the meantime.

The State's answer—that *Repsis I* "broke no new legal ground" proves too much. If the availability of Rule 60(b) relief in this posture were as settled as the State now says, the district court in *Repsis I* would not have denied it, and this Court would have had nothing to reverse.

Most significantly, the State shows no cognizable prejudice. The State raises a general claim of the public's interest in finality of judgments, but its primary claim is that "reopening the judgment would disrupt the settled administration of criminal justice in Osage County." Br. of Appellees at 11, 17–18, Doc. 21 at 18, 24–25. Yet prejudice requires more than the inability to rely on the judgment in the future, and the criminal-justice concern has little to do with the Rule 60(c) question of prejudice from delay. Whether the Nation won confirmation of its

8

Reservation in 2021 or 2026, the same transitional questions would arise, as they have throughout Oklahoma since *McGirt. See Bosse v. State*, 499 P.3d 771, 774 (Okla. Crim. App. 2021) (holding *McGirt* not retroactive on postconviction review). Those questions continue to test the contours of tribal criminal jurisdiction, see *Hooper v. City of Tulsa*, 71 F.4th 1270 (10th Cir. 2023); *United States v. Hopson*, 150 F.4th 1290, 1299 (10th Cir. 2025), and can be managed on the Osage Reservation as on other Oklahoma reservations.

The reasonable-time inquiry does weigh the "public interest" in the dispute, *Repsis I*, 74 F.4th at 1217-18, but the "public" is not only the State, it is also the Nation. The State's speculative claim of prejudice from a four-year "delay" pales beside the prejudice the Nation suffers if *Irby* permanently deprives it of a Reservation Congress never disestablished. The overwhelming public interest lies in honoring the United States' commitments to the Nation, in Congress's singular authority over disestablishment, and in the uniform application of *McGirt*. Dire predictions of disruption are no answer. The State pressed the same arguments in *McGirt* and lost, because "dire warnings are just that, and not a license for us to disregard the law." *McGirt*, 591 U.S. at 937, *see also*

9

*Hooper,* 71 F.4th at 1282 (confining the inquiry to interpreting the text Congress enacted).

## II. Rule 60(b)(5) Reaches the *Irby* Judgment.

### A. The Rule's text is not confined to injunctions and consent decrees.

Rule 60(b)(5), reason [iii], authorizes relief when "applying [a judgment] prospectively is no longer equitable." The words "injunction," "consent decree," and "ongoing managerial role" appear nowhere in the Rule. The State supplies these limits from case law and then treats gloss as text. When a rule is meant to reach only injunctions, it says so; Rule 60(b)(5) does not. These are not words Congress enacted. The Rule's text marks the relief available.

The State's lead authority, *Twelve John Does v. District of Columbia*, 841 F.2d 1133 (D.C. Cir. 1988), is out-of-circuit and, on its own terms, decided only that an order fixing who remained a defendant "did not compel [anyone] to perform" any future act. *Id.* at 1139. Its "executory or . . . supervision of "changing conduct" formulation is drawn from *Pennsylvania v. Wheeling & Belmont Bridge Co.,* 59 U.S. 421, 431 (1856) and *United States v. Swift & Co.,* 286 U.S. 106 (1932).

10

*Wheeling* and *Swift* do not limit the Rule and confirm that a court may revise a final decree "if satisfied that what it has been doing has been turned through changing circumstances into an instrument of wrong." *Swift*, 286 U.S. at 114–15.

The State's "nine circuits" and the two Tenth Circuit cases it adds— *Dowell v. Bd. of Educ. of Okla. City Pub. Schs.,* 8 F.3d 1501 (10th Cir. 1993) and the unpublished *United States v. Melot*, 712 F. App'x 719 (10th Cir. 2017) —stand for the unremarkable proposition that the *ordinary* preclusive effect "common to all judgments" is not, by itself, "prospective application." *Coltec Indus. v. Hobgood*, 280 F.3d 262, 272 (3d Cir. 2002). The Nation does not contend otherwise for general judgments and those unlike the extraordinary and unique judgment that disestablished the Osage Reservation.

The State never acknowledges that *Irby*, clearly a federal Indian law case, does not operate as garden-variety issue preclusion between parties. It operates as a standing declaration that the Reservation does not exist—a declaration the State invoked to foreclose *McGirt* review of questions of federal and tribal criminal jurisdiction in Indian country.

11

*McCauley*, 548 P.3d at 464-65. That is prospective legal operation in every sense that matters.

*Kirksey v. City of Jackson* states the correct rule: a dismissal has prospective application where it "would bar a new and independent action . . . reasserted on the basis of the alleged changes in controlling law." 714 F.2d 42, 43 (5th Cir. 1983). The State seeks to prevent *any* inquiry in *any forum* into whether the Nation's Reservation is intact under the controlling Supreme Court law.  In the same breath, it asks this Court to treat *Irby* judgment as too inert to reach under the one Rule that could correct it.

The State cannot decide what *Irby* is. For its prospective-application argument, *Irby* is a bare "dismissal" that decided nothing forward-looking. Yet the Nation sued for a declaration that its Reservation had *not* been disestablished and for an injunction against taxation; the district court entered judgment for the State, declaring the opposite—that the Reservation had "ceased to exist." That is a declaratory determination of sovereign status, not a dismissal that merely sends the parties home. This Court said as much in the 2007 interlocutory appeal, holding that the relief at issue was "prospective" in

12

both "caption" and "substance." *Osage Nation v. Oklahoma ex rel. Okla. Tax Comm'n*, 260 F. App'x 13, 22 (10th Cir. 2007). The State cannot recharacterize that judgment as a spent, backward-looking dismissal to escape Rule 60(b)(5) while treating it everywhere else—including in *McCauley*—as a binding declaration that the Reservation does not exist. Was the suit merely dismissed, leaving nothing binding, or did the State obtain a declaratory ruling binding the Nation and all in privity with it— as it insisted in *McCauley*? It cannot be both, and only the second answer squares with how the State has wielded *Irby*.

## B. *Repsis I* controls and forecloses the rule the State defends.

The State's procedural theory cannot be squared with this Court's decision in *Repsis I*. There, a tribe sought Rule 60(b) relief from a final order dismissing its treaty hunting-rights claim—no injunction, no consent decree, no continuing supervision—after intervening Supreme Court precedent undermined the ground of decision. This Court held the district court abused its discretion in treating itself as powerless and remanded for merits consideration. *Repsis I*, 74 F.4th at 1219–22. The State says *Repsis I* "never addressed whether the . . . judgment had prospective application"—true, but beside the point. *Repsis I* held that a

district court should entertain a Rule 60(b) motion directed at a final merits dismissal this Court affirmed. That the panel left the prospective-application question for remand does not aid the State; it confirms such a motion is not barred at the threshold but must be decided, not refused. On remand the district court granted relief under reason [iii] on a judgment that enjoined no one. *Crow Tribe of Indians v. Repsis*, 2024 WL 1478580, at *10, *12 (D. Wyo. Mar. 28, 2024) (*Repsis II*).

### C. *Agostini* and the equities support relief; "preclusion is common to all judgments" does not describe *Irby*.

The State reads *Agostini v. Felton*, 521 U.S. 203 (1997), as a case about injunctions. Br. of Appellees at 30, Doc. 21 at 37.  It is a case about intervening law. *Agostini* held that adherence to a prior decision "whose underpinnings have been eroded" by later Supreme Court precedent works a "manifest injustice," and that a court "abuses its discretion" when it rests on "a legal principle that can no longer be sustained." 521 U.S. at 215, 235–37. That the vehicle there was an injunction reflects the facts, not a ceiling on the Rule. The State's own "floodgates" authority, Br. of Appellees at 29–30, Doc. 21 at 36–37, makes the Nation's point. The District Court invoked *Arizona v. California*, 460 U.S. 605 (1983), but that case withheld reopening only because the parties sought "the

14

relitigation of factual determinations on which a decree has been based";
it confirms that "new issues and changed circumstances" remain a proper
basis for modification. *Id.* at 624–25. The Nation seeks no reweighing of
Irby's evidence. It relies on an intervening decision clarifying that no
court had power to disestablish a reservation at all. The impact of a
perpetual judicial declaration that a sovereign's territory does not exist
cannot be fairly compared to the money judgment in *Coltec.*

The "no limiting principle" worry is also misplaced. *See* Br. of
Appellees at 25, Doc. 21 at 32. The limit is in the Rule's own words—"no
longer equitable"—and "extraordinary circumstances." Relief is
warranted not whenever the law shifts, but when an intervening
Supreme Court decision reveals that a final judgment rests on a method
the Court has since held impermissible, and when its continued operation
inflicts an ongoing, sovereignty-defining injury on an entire people.
*Herrera v. Wyoming,* 587 U.S. 329 (2019), confirms the point. There, an
intervening decision "repudiated the reasoning on which the Tenth
Circuit relied in *Repsis,*" so that judgment could not be given preclusive
effect. *Id.* at 342–43. An exception is warranted, the Court explained,
where there has been an intervening "change in [the] applicable legal

15

context," because applying preclusion "in changed circumstances may not 'advance the equitable administration of the law.'" *Id.* at 343. That is more true when the intervening decision does not merely revise a rule but marks the limit of the court's power. If *Irby* exceeded that limit, giving it continuing prospective effect can never be "equitable" within the meaning of reason [iii].

**D.  The State's "file a new suit" alternative is both illusory and legally irrelevant.**

The State says the Nation may simply sue again. It said the same below—then successfully argued in *McCauley* that *Irby* precludes exactly that argument. *McCauley*, 548 P.3d at 464-65. The State cannot offer a remedy in this Court that it defeats in another. Its new suggestion that *Herrera*'s changed-circumstances exception to issue preclusion *might* let a future plaintiff through only underscores the problem: the State "does not concede the point," and would litigate preclusion again. In any event, the availability of some other vehicle is not a textual condition on Rule 60(b)(5). The Rule replaced the ancient writs with "a more simple and expeditious motion," *Oliver v. City of Shattuck*, 157 F.2d 150, 153 (10th Cir. 1946), not with an instruction to relitigate from scratch what a court may correct directly.

16

## III.  Rule 60(b)(6) Independently Authorizes Relief.

If Rule 60(b)(5) does not reach the *Irby* judgment, Rule 60(b)(6) surely does. The two are pleaded in the alternative; reason [vi] is the residual provision, available when the first five clauses are not. *Kemp v. United States*, 596 U.S. 528, 533 (2022). This case fits reason [vi] for a reason the State never confronts: *McGirt* did not merely revise a rule of decision; it defined the outer boundary of the judicial power, holding that a court has no authority to disestablish a reservation at all. A final judgment that crossed that boundary—and that continues to deny an entire Nation its territory—is the paradigmatic "extraordinary circumstance," whether or not it also carries "prospective application" under reason [iii]. The Nation's showing proceeds on two alternative tracks. Principally, this is not an ordinary change-in-law case: one extraordinary circumstance is that *Irby* did what only Congress may do, an overreach change-in-law rule from *FTC v. Elite IT Partners, Inc.*, 91 F.4th 1042 (10th Cir. 2024) does not address. *See* infra Part III.C. Alternatively, even analyzed as a change in decisional law, *Irby* and *McGirt* are factually related under *Elite IT* and *Pierce v. Cook & Co.*, 518 F.2d 720 (10th Cir. 1975) (en banc). *See* infra Parts III.A–B.

17

### A. *Elite IT* governs an ordinary change in case law and applies *Pierce* not narrows it.

The State's Rule 60(b)(6) argument, like the district court's opinion, rests entirely on *Elite IT*'s statement that "a change in case law doesn't justify vacatur under Rule 60(b)(6)," subject to two acknowledged exceptions. 91 F.4th at 1049. That rule is addressed, by its terms, to a typical change in case law." Indeed *McGirt* changed the law of disestablishment, but did so in a manner that defines the boundary of the judicial power—holding that a court never had authority to disestablish a reservation at all. As explained in Part III C, the Nation submits that the *Irby* judgment, crossed a boundary of the judicial power that *McGirt* clarified. *Elite IT*'s change-in-law rule simply does not govern the motion here. Even if the motion is treated as resting on a change in decisional law, *Elite IT* is satisfied, as the balance of this section shows.

Even within its own domain, *Elite IT* applied this Court's en banc decision in *Pierce*—it did not displace it. *Elite IT* recognized that relief is warranted to "ensure consistency in the treatment of cases arising out of the same transaction or occurrence," quoting *Pierce*, and distinguishing *Collins v. City of Wichita*, 254 F. 2d 837 (10th Cir. 1958) because there

18

"the decisional change came in an unrelated case." 91 F.4th at 1049. That is one recognized circumstance, not a redefinition of the "extraordinary circumstances" the Supreme Court and this Court have long held Rule 60(b)(6) can reach. *Pierce*, 518 F.2d at 722 (recognizing the rule provides a "grand reservoir of equitable power to do justice in a particular case"); *Buck v. Davis*, 580 U.S. 100, 126 (2017) (finding the "whole purpose" of Rule 60(b) "is to make an exception to finality"); *see Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863–64 (1988).

### B.  That Osage allotment provisions are *more* protective of Reservation status favors vacating the *Irby* judgment not upholding it.

The State claims because the Nation's allotment provisions are *more* protective of reservation status than the Creek's, the two cases cannot be "factually related." That argument mistakes the question. Relatedness for Rule 60(b)(6) purposes turns on whether the intervening decision governs the *legal question* the earlier judgment resolved—here, whether allotment-era legislation in former Indian Territory disestablished a treaty Reservation. *Irby* and *McGirt* answered the identical question under the Supreme Court's disestablishment framework but reach opposite results on the decisive issue: whether a

19

court may infer disestablishment absent clear textual command. That Osage statutes are *stronger* against disestablishment supports the Nation's position on the merits and makes *McGirt* apply a fortiori.

The State's reliance on *Repsis II* cuts the other way. On remand the district court granted relief under Rule 60(b)(5)'s third prong from a final, non-injunctive judgment, holding that applying the vacated rationale "prospectively, post-*Herrera*," would be "inequitable" and "detrimental to public interest." *Repsis II*, 2024 WL 1478580, at *10. It held, in the alternative, that Rule 60(b)(6) "could also provide relief," reading *Elite IT* to permit vacatur when an intervening Supreme Court decision has "indisputably and pellucidly" abrogated the precedent on which the judgment rests. *Id.* at *11 (quoting *Elite IT*, 91 F.4th at 1051). That standard is met here. *McGirt* indisputably and pellucidly abrogated the analytic method on which *Irby* depends—inferring disestablishment from extratextual sources after finding no disestablishing text. Nor need the connection be tribe-specific: *Herrera* itself construed the Crow treaty by way of *Minnesota v. Mille Lacs Band of Chippewa Indians*, 526 U.S. 172 (1999), a case about the Chippewa. What controls is whether the

20

intervening decision governs the legal question the judgment resolved—

and *McGirt* governs disestablishment.

### C. This Court's judgment disestablishing the Reservation on the basis of extratextual evidence alone was an exercise of authority that belongs solely to Congress.

The State's 60(b)(6) argument attacks a target the Nation has not

raised. It insists that "a change in case law doesn't justify vacatur," and

it stacks up *Collins, Johnston v. Cigna Corp.,* 14 F. 3d 486 (10th Cir.

1993), and *Elite IT* for that proposition. The Nation, however, does not

necessarily seek relief because the law changed. It seeks relief because

*Irby* did something a court had no power to do: it disestablished a

Nation's Indian country. That distinction is the difference between an

ordinary case and an extraordinary one. A later decision announcing a

better reading of a statute may be a nuanced change in law; a judgment

that allows the Judiciary to seize a power the Constitution assigns to

Congress is an overreach. *Collins* and *Elite IT* police the former. This case

presents the latter.

Framed correctly, the State's "reargument" objection also falls

away. The Nation is not using Rule 60(b) to relitigate historians or re-

run the *Solem* factors, *see Solem v. Bartlett,* 465 U.S. 463 (1984), as

21

though the mandate never issued. *See Servants of the Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). Its point is antecedent to the merits: a court has no role—through judicial doctrine or otherwise—in redrawing the borders of a Nation, because the disestablishment of a federally recognized Nation is a job left solely to Congress. *McGirt*, 591 U.S. at 903. A judgment that purports to end a Nation's sovereign territorial existence without a word of congressional command is not a ruling this Court is asked to reconsider on its merits; it is an act the Judiciary had no authority to perform in the first place, and Rule 60(b)(6) exists to relieve a party of such judgments.

*McGirt* is what makes the overreach unmistakable. It held that "[o]nly Congress can divest a reservation of its land," that "[c]ourts have no proper role in the adjustment of reservation borders," and that "[s]aving the political branches the embarrassment of disestablishing a reservation is not one of our constitutionally assigned prerogatives." 591 U.S. at 903. Measured against that command, *Irby*—which found no disestablishing text and supplied disestablishment by inference—was not a permissible exercise of the judicial power. The State does not dispute that premise; it concedes it. Its own brief admits that *Irby* found

22

the statutory language "nonconclusive" and rested instead on "the manner in which the Osage Allotment Act was negotiated." Br. of Appellees at 6, Doc. 21 at 13. That admission is dispositive: a court that decrees the disestablishment of a Reservation while conceding that no Act of Congress did so has supplied by judicial inference the very act the Constitution commits to Congress alone. That is the overreach that makes this an extraordinary circumstance, not an ordinary error of decision.

The State answers the Nation's Article III argument with *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260 (2010), urging that an erroneous merits ruling is no excess of judicial power because relief from void judgments is confined to jurisdictional defects and denials of due process. Br. of Appellees at 42, Doc. 21 at 49. That locates this argument in the right place. In the ordinary sense of the word, *Irby* is void: a court exercised a power the Constitution does not give it, decreeing the disestablishment of a Nation that only Congress may decree. The Nation does not, however, press that as reason [iv] voidness—*Espinosa* confines that technical category, *id.* at 271, and the Nation does not shoehorn *Irby* into it. That is exactly why this is a Rule 60(b)(6) case: a defect this

23

fundamental—so profound it resembles voidness—yet falling outside reason [iv]'s narrow category is the "extraordinary circumstance" reason [vi] was written to reach. The wrong is extraordinary not only in kind but in reach: unlike an ordinary judgment binding two parties to a discrete dispute, *Irby* binds generations of Osages.

### D. The Federal Indian Law overlay removes this case from the realm of ordinary judgments.

The Nation's original claim was narrow. It sought relief from state income tax only for Osage citizens who both live and work on the Reservation—not those who live or work off-Reservation, not members of other tribes, not non-Indians. *See McClanahan v. Ariz. State Tax Comm'n,* 411 U.S. 164, 172–73 (1973)*; Williams v. Lee*, 358 U.S. 217, 220 (1959); *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505 (1991); *Okla. Tax Comm'n v. Sac & Fox Nation*, 508 U.S. 114 (1993). The judgment the Nation asks this Court to reopen, however, is anything but narrow: *Irby* continues to restrict the Nation's sovereignty across criminal jurisdiction, public safety, and eligibility for federal programs, in ways no ordinary civil judgment does.

That mismatch is why the State's framing fails. It treats the Nation's request as a routine motion in a routine case and asks this Court

24

to resolve it with rules developed for routine judgments—the "prospective application" gloss on reason [iii] and the "same transaction or occurrence" gloss on reason [vi], both drawn from commercial and tort disputes that have nothing to do with tribal sovereignty. Those rules were not made for a judgment that disestablished a Nation's Reservation.

This Court decides questions of Federal Indian Law against "the relevant Indian law context that shapes the analysis," *Breakthrough*, 629 F.3d at 1182—including the sovereign status of Indian tribes, the treaty rights the Constitution secures, U.S. Const. art. VI, cl. 2; *id.* art. I, § 8, cl. 3, and Congress's exclusive authority over disestablishment. The State offers none of that context; it defends *Irby* with generalized finality concerns alone.

By rejecting the long-held assumption that no reservations remained in Oklahoma, and by holding that disestablishment can never be found without explicit congressional text, *McGirt* took *Irby* out of any fair comparison to ordinary judgments. The State's answer—denying that *McGirt* announced any new rule for disestablishment, Br. of Appellees at 44, Doc. 21 at 51—only proves the point. On the State's telling, the most consequential Indian-law decision in a century said

25

nothing about what is and is not Indian country. That cannot be credited, and the State's warnings of disruption are no basis to leave *Irby* in place. *McGirt*, 591 U.S. at 936.

### E. Extraordinary circumstances are compounded to support vacatur of the *Irby* judgment.

The State answers each thread as a single stitch—timeliness, relatedness, voidness, the Indian-law context—pronouncing each, in isolation, "ordinary." Rule 60(b)(6) does not ask, however, whether any single feature, standing by itself, would compel relief. It asks whether the circumstances, considered together, are extraordinary. *See Liljeberg,* 486 U.S. at 863–64. Here they converge as in no ordinary case: a judgment that did what only Congress may do, undermined by an intervening decision marking the outer bound of the judicial power, wielded as a sword while the State insists it lies beyond reach, inflicting its harm on generations of Osages in perpetuity, and left the Osage the lone Oklahoma tribe denied the merits determination *McGirt* afforded all others. No one feature need carry the day. Their combination presents the extraordinary circumstances the residual clause was written to reach. *Kemp*, 596 U.S. at 533.

26

**IV.  *Irby* Cannot Be Reconciled With *McGirt*, and This Court Should Not Permit it to Deliver the "Final Push."**

The State's merits defense rests on a grammatical maneuver: because *Irby* said the statutes "do[] not unambiguously suggest" disestablishment, the State reasons, *Irby* must have found an ambiguity that allowed proceeding to *Solem*'s later steps. That inverts what *Irby* actually did. *Irby* identified no statutory language suggesting disestablishment—ambiguous or otherwise—and catalogued provisions pointing the other way: allotment to tribal members, no opening to non-Indian settlement, reservation of the entire mineral estate, and a continuing tribal government. It then inferred disestablishment "despite statutory language that would otherwise suggest unchanged reservation boundaries." 597 F.3d at 1122. This Court later described that move as reliance on "step two evidence" to find disestablishment "despite an absence of clear textual evidence." *Murphy v. Royal,* 875 F.3d 896, 954 (10th Cir. 2017). Finding no language suggesting disestablishment is not the same as finding a genuine textual ambiguity: a court that locates no disestablishing text has nothing to "clear up." 597 F.3d at 1124. Reading *Irby*'s double negative as a license to consult historians and demographics is precisely the move *McGirt* forecloses, because extratextual sources

27

may resolve an ambiguity in the statute's words but may not manufacture one.

Extratextual sources may be consulted only to "clear up . . . not create" ambiguity, and "there is only one place we may look: the Acts of Congress." 591 U.S. at 903, 916. Nothing in *Oklahoma v. Castro-Huerta,* 597 U.S. 629 (2022), disturbed that framework. *See Hooper,* 71 F.4th at 1282 (reiterating that courts "may not replace the actual text with speculation as to Congress' intent," citing *Castro-Huerta*).

A court that finds no disestablishing text and then supplies disestablishment from historians and demographics has not resolved a statutory ambiguity; it has legislated. That is the "final push" *McGirt* says no court may give. *Id.* at 903. A decisive fact bears repeating because the State never confronts it. In more than a century, and across the district court, this Court in *Irby*, and now in the State's Response, *no one has identified any Act of Congress that disestablishes the Osage Reservation.* "[I]ts silence is dispositive." *Id.*

The State's remaining point—that *McGirt* "affirmed, not reversed," this Court—misidentifies the decision it affirmed. *McGirt* affirmed *Murphy*, a *different* panel that reached the *correct* result by refusing to

28

infer disestablishment absent clear text. It did not ratify *Irby*'s contrary method. The State dismisses *Murphy*'s account that *Irby* relied on "step two evidence" to find disestablishment "despite an absence of clear textual evidence," 875 F.3d at 954—as "descriptive, not disapproving." The description is the point, however: it names precisely the method *McGirt* later held impermissible, and a superseding Supreme Court decision needs no panel's disapproval to abrogate it. *In re Smith*, 10 F.3d 723 (10th Cir. 1993) cuts against the State. A panel is only bound by prior precedent "absent . . . a superseding contrary decision by the Supreme Court." *Id.* at 724. *McGirt* is that superseding decision. Honoring *Irby* now would require this Court to prefer a repudiated method over the Supreme Court's controlling one.

## V. This Court Should Reach the Merits.

Because the disestablishment question is purely legal and rests on treaties and statutes already in the record, no remand is needed. Title 28 U.S.C. § 2106 empowers this Court to "direct the entry of such appropriate judgment" as the case requires. Every day *Irby* stands, the State may invoke it to deny the Osage the *McGirt* review every other Oklahoma tribe receives. That disparity is itself a basis for relief: "the

29

interest in finality of litigation must yield where the interests of justice would make unfair the strict application of" the rules—most of all where, as here, a party "stands alone" among those similarly situated. *Gondeck v. Pan Am. World Airways, Inc.*, 382 U.S. 25, 26–27 (1965); *see In re Terrorist Attacks on Sept. 11, 2001*, 741 F.3d 353, 357–58 (2d Cir. 2013) (granting relief on that rationale, applying *Pierce*). That principle opens no floodgates: it reaches only a closed set of similarly situated parties resolved under one framework—the Oklahoma reservations measured against *Solem* and *McGirt*—not the open universe of litigants affected by any change in law; the Osage alone has been denied a merits determination. This civil motion is its fair and just avenue to vindicate the Reservation.  Should the Court prefer the ordinary course, it may reverse and remand with instructions that Rule 60(b)(5) and (6) reach a final judgment whose legal basis intervening precedent has undermined—but it should not leave *Irby* in force meanwhile.

## Conclusion

This Court should reverse the March 2, 2026 Opinion and Order, vacate the *Irby* judgment, and hold—or remand with instructions to hold—that Congress has not disestablished the Osage Reservation. What

*Irby* decides is not the tax of one member for one year; it is the sovereign inheritance of generations of Osages, on land the United States promised would be their permanent home. No court has ever found the congressional language that alone could take it from them, and this Court should decline the State's invitation to supply the final push.

Respectfully submitted,

/s/ Eugene Bertman
Eugene Bertman, OBA #19406
TALLEY, TURNER, STICE &
BERTMAN
130 E. Eufaula Street
Norman, Oklahoma 73069
(405) 364-8300
gbertman@ttsblaw.com

Counsel for Appellant Osage Nation

31

## Certificate of Compliance

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) and 32(a)(7)(B)(ii) because, excluding the parts exempted by Fed. R. App. P. 32(f), it contains 6,379 words, no more than half the type volume of a principal brief.

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

/s/ Eugene Bertman
Eugene Bertman
Counsel for Appellant Osage Nation

32

## Certificate of Digital Submission

I hereby certify that: (1) all required privacy redactions have been made in compliance with 10th Cir. R. 25.5 and Fed. R. App. P. 25(a)(5); (2) any hard copies submitted to the Clerk are exact copies of the version filed electronically via the Court's CM/ECF system; and (3) this document was scanned for viruses using the latest version of ESET antivirus, and according to that program is free of viruses.

/s/ Eugene Bertman
Eugene Bertman

## Certificate of Service

I hereby certify that on July 29, 2026, I electronically filed the foregoing Reply Brief of Appellant Osage Nation with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the appellate CM/ECF system, which will accomplish service on all registered participants, including:

Garry M. Gaskins, II
Will Flanagan
Office of the Attorney General, State of Oklahoma
313 N.E. 21st Street, Oklahoma City, OK 73105
Counsel for Defendants-Appellees

/s/ Eugene Bertman
Eugene Bertman